UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CHICAGO BRIDGE & IRON COMPANY N.V. SECURITIES LITIGATION | Case No.: 1:17-cv-01580-LGS<br><br>Hon. Lorna Schofield |

**DIRECT ACTION PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR EMERGENCY MOTION FOR LEAVE TO SUBMIT
EXCLUSION FROM CLASS ACTION**

**ROLNICK KRAMER SADIGHI LLP**
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
(212) 597-2800

*Attorneys for Direct Action Plaintiffs*

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................3

      A.    The Direct Action Plaintiffs Opt Out of the CBI Class Action to Pursue their Own Direct Claims against Defendants..............................3

      B.    Office Closures and Dislocation Caused by the COVID Pandemic Prevent the Direct Action Plaintiffs from Timely Receiving the Class Notice and Learning About the Exclusion Date ......................................................................................4

ARGUMENT ....................................................................................................................7

      A.    The Direct Action Plaintiffs' Delay is Imminently Excusable ...............................................................................................8

      B.    There is no Prejudice to any Party Here .......................................................9

      C.    There is Minimal Delay Here and Such Delay Will Not Have An Effect on Judicial Proceedings in Any Event........................................10

      D.    The Direct Action Plaintiffs Have Acted, and Litigated Their Own Claims against Defendants, in Good Faith.........................................11

CONCLUSION................................................................................................................12

## **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*In re Adelphia Commc'ns Corp. Sec. & Derivative. Litig.*,
   271 F. App'x 41 (2d Cir. 2008). ..................................................................................7, 10, 11

*In re Chicago Bridge & Iron Company N.V. Securities Litigation*,
   Case No. 17-cv-1580 (S.D.N.Y.)........................................................................................... 1

*In re PaineWebber Ltd. Partnerships Litig.*,
   147 F.3d 132 (2d Cir. 1998)................................................................................................. 7

*Massey v. On-Site Manager, Inc.*,
   No. 11-cv-2612-BMC, 2013 WL 3149452 (E.D.N.Y. June 19, 2013)...............................8, 11

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*,
   607 U.S. 380 (1993)............................................................................................................. 8

*Silivanch v. Celebrity Cruises, Inc.*,
   333 F.3d 355 (2d Cir. 2003).................................................................................................. 8

*In re Worldcom, Inc. Sec. Litig.*,
   No. 02-cv-3288, 2005 WL 1048073 (S.D.N.Y. May 5, 2005) ..........................................8, 11

**RULES**

Federal Rule of Civil Procedure 6(b)................................................................................................1

The Direct Action Plaintiffs[1] submit this memorandum of law in support of their emergency motion pursuant to Federal Rule of Civil Procedure 6(b) (the "Motion") for leave to submit requests for exclusion from the class action entitled *In re Chicago Bridge & Iron Company N.V. Securities Litigation*, Case No. 17-cv-1580 (S.D.N.Y.) (the "Class Action"), and exclude the Direct Action Plaintiffs from the Class.[2]

## INTRODUCTION

The Direct Action Plaintiffs are investment funds whose New York City and northern New Jersey offices have been closed since mid-March because of COVID. On Friday, October 9, 2020, they learned through a filing in this case that the Notice of Pendency of the Class Action (the "Class Notice") had been mailed and that the Class Notice set a September 6, 2020 date by which to request an exclusion from the Class Action (the "Exclusion" or "Opt-Out Date"). The Direct Action Plaintiffs do not believe they received the Class Notice, and have in any event not been able to locate it. Consequently, they were unaware until October 9 that the Exclusion Date set

---

[1] The Direct Action Plaintiffs are the plaintiffs in three consolidated actions pending before the Court by purchasers of the common stock of Defendants Chicago Bridge and Iron Company N.V. ("CBI"), Case Nos. 18-cv-09927-LGS (the "Gotham Action"), 18-cv-09928-LGS (the "Appaloosa Action"), and 19-cv-01750-LGS (the "CB Litigation Action"). The plaintiffs in the Gotham Action are Gotham Diversified Neutral Master Fund, LP, Gotham Enhanced Long Master Fund, LP, Gotham Customized Strategies II, LP, Gotham Targeted Neutral Master Fund, LP, Gotham Penguin Fund, LP, Gotham Absolute Return Fund, a series of FundVantage Trust, Gotham Enhanced Return Fund, a series of FundVantage Trust, Gotham Enhanced Return Fund, a series of FundVantage Trust, Gotham Neutral Fund, a series of FundVantage Trust, Gotham Hedged Value Strategies 115/65 (Master), L.P., and Gotham Hedged Value Strategies 140/40 (Master), L.P. The plaintiffs in the Appaloosa Action are Appaloosa Investment L.P. I, on its own behalf and as successor in interest to Thoroughbred Fund LP, and Palomino Master Ltd., as successor in interest to Thoroughbred Master Ltd. and Palomino Fund Ltd. The Plaintiff in the CB Litigation Action is CB Litigation Recovery I, LLC. The Gotham Action is the lead case for the Direct Action Plaintiffs and the Appaloosa and CB Litigation Actions have been administratively closed. (*See* ECF No. 67 in Case No. 18-cv-09927-LGS.)

[2] The Direct Action Plaintiffs have styled this as an emergency motion because they are required to file this motion diligently to confirm their right to opt-out, not because they seek expedited or injunctive relief. Because this is an emergency motion, the Direct Action Plaintiffs have not filed a request for a pre-motion conference under Rule III.A of the Court's Individual Rules and Procedures for Civil Cases.

forth in the Class Notice – which was never filed on the Class Action docket – had passed. Upon learning that the Exclusion Date had passed, the Direct Action Plaintiffs acted immediately, filing this Motion and submitting their requests for exclusion consistent with the Notice on the next available business day.

In these circumstances, any delay on the part of the Direct Action Plaintiffs to request exclusion from the Class Action is excusable neglect. The significant disruption to the New York-area caused by COVID has prevented the Direct Action Plaintiffs from receiving notice of the Opt-Out Date, and it is self-evident that an absent party cannot comply with a date of which it is unaware. Moreover, and critically, there is absolutely no prejudice here. **Class Plaintiffs do not oppose a brief extension to the Exclusion Deadline** to accommodate the Direct Action Plaintiffs, and indeed have represented that *they will contact the claims administrator to direct it to accept the Direct Action Plaintiffs' requests for exclusion, regardless of postmark date*. As to Defendants, this is not a settlement class and an extension of the Exclusion Deadline will not delay the case, which is in the midst of summary judgment briefing. A request for exclusion is intended to inform the Defendants about the size of the class, which they will know well before the Class Action goes to trial. If the Class Action later settles, there will likely be another opportunity at that point for putative members to opt out of the settlement class.

Finally, the Direct Action Plaintiffs have been diligent and acted in good faith in both litigating their own claims and filing this motion. The Direct Action Plaintiffs are investment funds who suffered tens of millions of dollars of damages in connection with their purchases of CBI common stock and filed their own complaints to pursue direct claims against CBI and its former executives. Those claims have survived a motion to dismiss and, for the sake of judicial and party efficiency, are now stayed pending the outcome of the motion summary judgment in the

Class Action.  The Direct Action Plaintiffs learned on Friday, October 9 that the Exclusion Date had passed, spent the holiday weekend drafting this Emergency Motion for leave to file exclusions, and then sought exclusion and filed the Motion on the first possible business day.

Accordingly, this Court should grant the Motion and provide the Direct Actions Plaintiffs with leave to exclude themselves from the Class Action.

## BACKGROUND

### A. The Direct Action Plaintiffs Opt Out of the CBI Class Action to Pursue their Own Direct Claims against Defendants

The Direct Action Plaintiffs are investment funds who purchased the common stock of CBI on the New York Stock Exchange ("NYSE") between October 30, 2013 and June 23, 2015. (October 13, 2020 Declaration of Lawrence M. Rolnick ("Rolnick Decl.") ¶ 1.)  They are therefore putative members of the class of purchasers certified by this Court in the Class Action on or about March 23, 2020 (the "Class").  (Rolnick Decl. Ex. A (Class Notice) at 1-2.)  Rather than remain in the Class, however, the Direct Action Plaintiffs elected to pursue their own direct claims against CBI and certain of its former executives.  Collectively, the Direct Action Plaintiffs allege tens of millions of dollars in investment losses caused by Defendants' misstatements about CBI's accounting and disclosures under U.S. generally accepted accounting principles ("GAAP"), as well as the progress of certain nuclear power plant projects CBI had recently acquired from The Shaw Group.  (*See generally* ECF No. 1 in Case No. 18-cv-09927-LGS.)

Defendants moved to dismiss the complaints in the Gotham and Appaloosa Actions on January 29, 2019, which the Court denied in large part on August 23, 2019.  (*See* ECF No. 57 in Case No. 18-cv-09927-LGS.)  By stipulation, the parties agreed to apply the rulings on the motions to dismiss in the Gotham and Appaloosa Actions to the CB Litigation Action.  (*See* ECF No. 14 in Case No. 19-cv-01750-LGS at 3.)  As is relevant here, the Direct Action Plaintiffs' claims for

common law fraud – which are unavailable in the Class Action – survived Defendants' motions to dismiss. (*See* ECF No. 57 in Case No. 18-cv-09927-LGS.) By a series of additional stipulations, and with the Court's approval (*see, e.g.*, ECF Nos. 67, 73 in Case No. 18-cv-09927-LGS), the parties to the Direct Actions agreed to consolidate all three actions and stay them pending Defendants' motion for summary judgment in the Class Action, which was filed on September 4, 2020 is and is currently being briefed.

> **B.    Office Closures and Dislocation Caused by the COVID Pandemic Prevent the Direct Action Plaintiffs from Timely Receiving the Class Notice and Learning About the Exclusion Date**

On March 23, 2020, this Court certified a Class of "[a]ll those who purchased or otherwise acquired the common stock of Chicago Bridge & Iron Company N.V. . . . on the New York Stock Exchange ('NYSE') during a Class Period from October 30, 2013, through and including June 23, 2015 (the 'Class')" (the "Class Certification order"). (Rolnick Decl. ¶ 6.) The Class Certification order directed the parties to "prepare a mutually agreeable form and manner of notice." (*Id.* (quoting ECF No. 237 in Case No. 17-cv-01580-LGS.) On April 13, 2020, Class Counsel filed a letter along with exhibits providing "draft," incomplete notices, which contemplated providing notice to Class members of both the Class Certification order itself and of putative class members' right to exclude themselves from the Class. (*See* ECF No. 239 in Case No. 17-cv-01580-LGS.) The draft notices were subject to Court approval. (Rolnick Decl. ¶ 10.)

These publicly filed notices did not contain the relevant dates for any putative class member to take action – such as send an exclusion request. Instead, the notices connected the Exclusion Date to the mailing date of the "postcard notice." According to the draft notice, exclusion would be due (postmarked) "no later than [45 days after the Postcard is mailed], 2020." On April 20, 2020, the Court approved the forms of notice filed on the docket. The Direct Action

Plaintiffs were aware of the Class Certification order and the draft notices on or around the time they were filed on the docket.  (*See* Rolnick Decl. ¶¶ 11-13.)

On May 7, 2020, however, the Court issued an order requiring that the Notice Administrator (Epiq Class Actions and Claims Solutions ("Epiq")) and Lead Plaintiff refrain from disseminating the Notice until the conclusion of a forthcoming mediation, and update the Court at that time.  (*See id.* at ECF No. 246.)  On July 14, 2020, the parties to the Class Action updated the Court that mediation had concluded.  (*See id.* at ECF No. 247.)  The joint letter made no mention of the sending of the Notice, and did not provide any statement or update as to when exclusion requests would be due.  (*See* Rolnick Decl. ¶¶ 13-14.)

Unbeknownst to the Direct Action Plaintiffs or counsel, however, the Class Notice was disseminated by mail in mid-July, 2020, and set forth September 6, 2020 as the date by which putative class members had to postmark to the Notice Administrator requests to exclude themselves from the Class (the "Exclusion" or "Opt-Out Date").  (*See* Rolnick Decl. Ex. A.)  Despite this mailing, no mention of the Notice (and the Exclusion Date set forth therein), occurred on the Class Action docket (or the Direct Action Plaintiffs' dockets) between July 14, 2020 and October 9, 2020, and there were no notices of electronic filing provided to the Direct Action Plaintiffs or their counsel containing a complete Class Notice that set forth the Exclusion Date.  (*See* Rolnick Decl. ¶¶ 15-16.)

On October 9, 2020, plaintiffs in a related action pending in Texas state court filed an emergency motion for leave to opt out and supporting papers (the "Texas Plaintiffs' Motion").  (*See* Rolnick Decl. ¶ 17; ECF No. 273 in Case No. 17-cv-01580-LGS.)  According to the Texas Plaintiffs' Motion, they did not receive the Class Notice and learn of the September 6 Exclusion

-5-

Date until on or about October 7, 2020, because their business offices are located in New York City and had been closed due to the COVID pandemic. (Rolnick Decl. ¶ 17.)

The Texas Plaintiffs' Motion was the first time the Direct Action Plaintiffs learned of the dissemination of the completed Notice and the setting of the Exclusion Date as September 6, 2020.[3] Because the draft notice keyed the Exclusion Date exclusively off of the date of the mailing of the postcard notice – something the Direct Action Plaintiffs did not know and could not have known from public sources – the Direct Action Plaintiffs did not know the Exclusion Date until after it had passed. Based on counsel's review, none of the Direct Action Plaintiffs had actual knowledge of the mailed Class Certification Notice. Counsel never received the Class Notice either. (*Id.* ¶¶ 18-19.)

There are at least two likely reasons why the Class Notice was never received. The Direct Action Plaintiffs are investment funds who act through investment managers or advisors. Each of the investment advisors for the Direct Action Plaintiffs has offices in either New York City – as to the Gotham Plaintiffs and the CB Litigation Plaintiff – or northern New Jersey – as to the Appaloosa Plaintiffs. Those offices have been either closed or severely disrupted since mid-March in response to COVID. (Rolnick Decl. ¶ 21.) Moreover, the Direct Action Plaintiffs – like the great majority of investors – held their CBI common stock in "street name" through a custodian bank that would have first received the Class Notice and then disseminated that notice to them (within ten days, pursuant to the Notice). During the time this Notice was promulgated, many custodial institutions, which are generally located in the New York area, closed (or severely reduced staffing at) their physical offices. Assuming the custodial institutions received the Notice timely, it is not guaranteed (and indeed unlikely) that they had the staffing or in-person knowledge

---

[3] September 6, 2020 was a Sunday. Because the Notice calls for 'postmarking' – and sending to a P.O. Box – this effectively called for exclusions to be mailed September 5, 2020.

to timely process and disseminate the Notice to the Direct Action Plaintiffs.  (*See id.* ¶¶ 22-24.)  Indeed, even in normal (non-pandemic) circumstances the delay in going through a "middle-man" notice provider can result in notices failing to reach their intended recipient, particularly in securities matters involving complex transactions dating back many years.  (*Id.* at ¶ 25.)

The Direct Action Plaintiffs responded immediately once they were informed that the Exclusion Date had passed by virtue of the Texas Plaintiffs' Motion (which was noticed on Friday, October 9).  Over the weekend, the Direct Action Plaintiffs, through counsel, prepared their requests for exclusion in a manner consistent with the Class Notice.  Thereafter, the Direct Action Plaintiffs, through counsel, contacted Class Counsel on the following Monday, October 12 (which is Columbus Day, a federal holiday) and secured agreement from Class Counsel that they would not oppose the Direct Action Plaintiffs' requests for exclusion and would in fact instruct Epiq to accept them, regardless of their postmark date.  (Rolnick Decl. ¶¶ 29-31.)

The Direct Action Plaintiffs have filed this Motion, and submitted their requests for exclusion, on the first possible business day following October 9, the date that they learned about the Class Notice and Exclusion Date.  (*See id.* ¶ 32.)

**ARGUMENT**

There are substantial legal and equitable grounds to grant the Direct Action Plaintiffs' request for leave to file an exclusion from the Class Action and exclude the Direct Action Plaintiffs from the Class.  "On a motion for late opt out, a district court must determine whether the movant's neglect was excusable, and whether either party would be substantially prejudiced by the court's action."  *In re Adelphia Commc'ns Corp. Sec. & Derivative. Litig.*, 271 F. App'x 41, 43 (2d Cir. 2008).  "Excusable neglect may be found where the relevant circumstances reveal inadvertent delays, mistakes, or carelessness . . . .  To establish excusable neglect, however, a movant must

-7-

show good faith and a reasonable basis for noncompliance." *Id.* at 44 (quoting *In re PaineWebber Ltd. Partnerships Litig.*, 147 F.3d 132, 135 (2d Cir. 1998)).

"[A] finding of excusable neglect is essentially 'an equitable [determination],' taking account of all relevant circumstances surrounding the party's omission." *In re Worldcom, Inc. Sec. Litig.*, No. 02-cv-3288, 2005 WL 1048073, at *6 (S.D.N.Y. May 5, 2005) (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003)). Courts generally consider four factors to find excusable neglect: "the reason for the delay, including whether it was within the reasonable control of the party;" "the danger of prejudice to the party opposing the extension;" "the length of the delay and its potential impact on judicial proceedings;" and "whether the party seeking the extension acted in good faith." *WorldCom*, 2005 WL 1048073, at *6 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 607 U.S. 380, 395 (1993)).

Each of these factors supports a finding of excusable neglect here.

### A. The Direct Action Plaintiffs' Delay is Imminently Excusable

The failure to submit a timely opt out can be excusable neglect when the putative class member did not actually receive the notice advising of the opt-out date and subsequently moves to exclude herself immediately. *See Massey v. On-Site Manager, Inc.*, No. 11-cv-2612-BMC, 2013 WL 3149452, at *2 (E.D.N.Y. June 19, 2013). As explained above, the Direct Action Plaintiffs did not submit exclusions by September 6 because neither they nor their counsel received the Class Notice in the mail and were therefore unaware of the Exclusion Date. (Rolnick Decl. ¶¶ 15-16.) This is likely because their offices were closed due to COVID or operating at highly limited capacity, or there were meaningful delays in their custodians' transmittal of the Class Notice to them – again due to COVID's effect on the New York-area – or both. (*Id.* ¶¶ 20-26.) It is self-evident this delay was "not within the reasonable control" of the Direct Action Plaintiffs. *See WorldCom*, 2005 WL 1048073, at *6. And as detailed above and below, the Direct Action

-8-

Plaintiffs are seeking immediate relief to extend the Opt-Out Date and exclude themselves from the Class.

There is no reason that the Direct Action Plaintiffs or their counsel would have received notice of the Exclusion Date independent of the Class Notice sent in the mail.  The mailing was meaningfully delayed (until July 2020) to accommodate a mediation between the Class Plaintiffs and Defendants, meaning that there was a four month gap between the Court's order granting class certification and the mailing of the Class Notice.  Moreover, there was neither a final Class Notice with an Exclusion Date filed on the Class Docket nor a notice advising the Court or parties about the date (and form) of the mailing.  (*See* Rolnick Decl. ¶¶ 13-14.)  Thus, even though the Direct Action Plaintiffs and their counsel were actively monitoring the Class Action pleadings and other filings – including because their case is stayed pending dispositive motions in the Class – that diligent action would not have alerted the Direct Action Plaintiffs to the Exclusion Date. This is confirmed by the very existence of the Texas Plaintiffs' Motion, an emergency request by another putative class member who did not receive notice and which first alerted the Direct Action Plaintiffs to the Exclusion Date and Class Notice.  (*See* ECF No. 273 in Case No. 17-cv-1580-LGS at 2-3.)

In these circumstances, the Direct Action Plaintiffs' inability to submit a timely exclusion is readily excusable.

### B. There is no Prejudice to any Party Here

There is absolutely no prejudice here. Class Plaintiffs have represented (through counsel) that they do not oppose an extension of time to allow the Direct Action Plaintiffs to submit exclusions and exclude themselves from the Class.  Indeed, Class Plaintiffs have gone a step further and stated that they will coordinate with the Claims Administrator to ensure that the Direct

Action Plaintiffs' exclusion requests are processed regardless of postmark date and that the Direct Action Plaintiffs are excluded.  (*See* Rolnick Decl. ¶ 3.)

The Defendants cannot be prejudiced by the Direct Action Plaintiffs opting-out either.  This is not a settlement class (and if there is a future settlement of the Class Action, such settlement class is likely to contain an additional opt-out provision).  The exclusion or not of the Direct Action Plaintiffs does not have any effect on a judgment or settlement being funded by the Defendants in the Class.  An opt out here also does not risk upsetting the finality of the Class Action, which is still ongoing.  Indeed, the thirty-seven day extension that the Direct Action Plaintiffs seek will fall entirely within the period that summary judgment in the Class Action is being briefed, meaning it will have no effect whatsoever on the deadlines in the Class Action, and will not (cannot) delay that case at all.  In any event, from the Defendants' perspective, a request for exclusion is principally relevant to provide information about the size of the class and resources necessary to defend against any opt outs, which information Defendants already have.

This total lack of prejudice to any party in the Class Action weighs heavily in favor of excusable neglect.  It is certainly nowhere near the "substantial prejudice[]" necessary to reject a late opt out.  *See Adelphia*, 271 F. App'x at 43.

### C. There is Minimal Delay Here and Such Delay Will Not Have An Effect on Judicial Proceedings in Any Event

This factor also supports a finding of excusable neglect.  As just detailed, the Direct Action Plaintiffs don't seek anything more than an effective thirty-seven day extension of an Exclusion Deadline of which they were not aware and which the Class Plaintiffs – the only possible party affected by this extension – do not oppose and in fact support.  Between September 6 and October 13, there was no ruling or finding in the Class Action which could be affected, and the Action as

of October 13 will be the same as of September 6 if this Motion is granted, namely, in the midst of summary judgment briefing and well before trial.

### D. The Direct Action Plaintiffs Have Acted, and Litigated Their Own Claims against Defendants, in Good Faith

This fourth and final factor, "good faith," is synonymous with diligence and strongly weighs in favor of a excusable neglect here. *See Adelphia*, 271 F. App'x at 44 ("To establish excusable neglect . . . , a movant must show good faith and a reasonable basis for noncompliance."). As detailed above, the Direct Action Plaintiffs' basis for noncompliance – office closures, delay and dislocation due to the COVID pandemic – is imminently reasonable. (*See supra* at pp. 6-7.) The Direct Action Plaintiffs were alerted to the Class Notice and Opt-Out Date on Friday, October 9, then spent the holiday weekend preparing their exclusion notices and this Motion, and submitted both on Tuesday, October 13, ***the first possible business day thereafter***. This is the epitome of good faith efforts to comply with a deadline, and the cases rejecting late opt outs for a failure to act diligently or in good faith have considered periods of time far longer than one business day (or four calendar days). *See, e.g.*, *Adelphia*, 271 F. App'x at 44 ("a full month"); *Massey*, 2013 WL 3149452, at *2 ("between two and three months"); *WorldCom*, 2005 WL 1048073, at *6 ("months"). Indeed, the Direct Action Plaintiffs are unaware of a case that rejects a finding of excusable neglect where, as here, the movant is seeking extension of time to opt out of a class before settlement, did not receive actual notice of the exclusion date, and acted within days to secure exclusion.

Consequently, this factor – like each of the other three detailed above – merits a finding of excusable neglect and an order providing the Direct Action Plaintiffs leave to opt out of the Class after the Exclusion Date set forth in the Class Notice.

-12-

## CONCLUSION

For the foregoing reasons, this Court should grant the Motion, grant the Direct Action Plaintiffs leave to exclude themselves from the Class, and order that the Direct Action Plaintiffs are excluded from the Class or direct the Claims Administrator to exclude them.

DATED:  October 13, 2020

Respectfully submitted,

**ROLNICK KRAMER SADIGHI LLP**

By:  ___/s/ Lawrence M. Rolnick_____
　　　Lawrence M. Rolnick
　　　Marc B. Kramer
　　　Richard A. Bodnar
　　　Brandon Fierro
　　　Jennifer A. Randolph
　　　1251 Avenue of the Americas, 18th Floor
　　　New York, New York 10020
　　　Tel:　(212) 597-2800

*Attorneys for the Direct Action Plaintiffs*