# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ) | |
| ) | **CASE NO. 1:17-CV-1580** |
| IN RE CHICAGO BRIDGE & IRON ) | |
| COMPANY N.V. SECURITIES LITIGATION ) | Hon. Lorna Schofield |
| ) | |
| ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT

**KAHN SWICK & FOTI, LLC**
Kim E. Miller (KM-6996)
J. Ryan Lopatka (*admitted PHV*)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (504) 455-1400
Fax: (504) 455-1498

Lewis S. Kahn
Craig J. Geraci, Jr. (*admitted PHV*)
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Fax: (504) 455-1498

*Lead Counsel for Lead Plaintiff*
*ALSAR Ltd. Partnership and*
*Class Counsel*

**POMERANTZ LLP**
Joshua B. Silverman (*admitted PHV*)
10 South La Salle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Fax: (312) 229-8811

*Counsel for Additional Plaintiffs Iron*
*Workers Local 40, 361, & 417 – Union*
*Security Funds and Iron Workers Local*
*580 – Joint Funds ("IW Funds")*

**TABLE OF CONTENTS**

**Page:**

I.    PRELIMINARY STATEMENT ................................................................................... 1

II.   SUMMARY OF THE LITIGATION AND SETTLEMENT ................................................ 2

   A.   Factual Background ....................................................................................... 2

   B.   Procedural History ......................................................................................... 3

   C.   The Settlement ............................................................................................... 7

III.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ................................ 9

   A.   The Settlement Satisfies the Factors for Final Approval
      under Rule 23(e)(2) and *Grinnell* ................................................................ 11

     1.   The Class Was Well-Represented by Class Representatives
        and their Counsel ................................................................................. 12

     2.   The Settlement Is the Result of Good Faith, Arm's Length
        Negotiations ........................................................................................ 14

     3.   The Settlement Is an Excellent Result for the Class ........................... 14

       a.   The costs, risks and delay of trial and appeal support approval ............... 16

       b.   Other Rule 23(e)(2)(C) factors support approval ..................................... 17

     4.   The Settlement Treats All Class Members Equitably ......................... 18

   B.   The Remaining *Grinnell* Factors Support Approval ................................... 19

IV.   THE PROPOSED PLAN OF ALLOCATION SHOULD BE
     PRELIMINARILY APPROVED ............................................................................ 20

V.    THE COURT SHOULD APPROVE THE PROPOSED
     PLAN OF NOTICE ............................................................................................. 20

VI.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................................. 22

VII.  CONCLUSION ................................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s):**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ................................................ 16

*Christine Asia Co. v. Yun Ma*,
    No. 15-md-02631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................................ 11, 18, 20

*City of Providence v. Aeropostale, Inc.*,
    No. 11-cv-7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014),
    *aff'd sub nom. Arbuthnot v. Pierson*,
    607 F. App'x 73 (2d Cir. 2015) ................................................ 18

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ................................................ 14

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ................................................ 11

*Hayes v. Harmony Gold Min. Co.*,
    No. 08-cv-03653, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011),
    *aff'd*, 509 F. App'x 21 (2d Cir. 2013) ................................................ 18

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ................................................ 20

*In re Agent Orange Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984),
    *aff'd sub nom. In re Agent Orange Prod. Liab. Litig.*,
    *MDL No. 381*, 818 F.2d 145 (2d Cir. 1987) ................................................ 15, 20

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    293 F.R.D. 459 (S.D.N.Y. 2013) ................................................ 9

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000),
    *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ................................ 14

*In re BioScrip, Inc. Sec. Litig.*,
    273 F. Supp. 3d 474 (S.D.N.Y. 2017),
    *aff'd sub nom. Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
    925 F.3d 63 (2d Cir. 2019) ................................................ 17

*In re China Sunergy Sec. Litig.*,
    No. 07-cv-7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................ 16

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) ................................................ 9

*In re Citigroup, Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) ................................................ 18

*In re Cnova N.V. Sec. Litig.*,
  No. 16-cv-04444 (S.D.N.Y. March 20, 2018)........................................................... 18

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178, 188 (S.D.N.Y. 2012) ...................................................................... 9

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79, (S.D.N.Y. 2007),
  *adhered to on reconsideration*, No. 01-cv-3020, 2007 WL 844710 (S.D.N.Y. Mar. 20, 2007)
  ............................................................................................................................... 10

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
  No. 12-cv-2548, 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) ............................. 18

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11-cv-2613, 2014 WL 6851096 (S.D.N.Y. Dec. 2, 2014) ................................ 10

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................ 18

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
  No. 02-mdl-1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)................................ 16

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................ 19

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99, 102 (S.D.N.Y. 1997) ...................................................................... 10

*In re PaineWebber Ltd. Partnerships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.), *aff'd sub nom. In re PaineWebber Inc. Ltd. Partnerships Litig.*,
  117 F.3d 721 (2d Cir. 1997)..................................................................................... 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ......................................................................... 11, 12

*In re Platinum & Palladium Commodities Litig.*,
  No. 10-cv-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014)............................... 12

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) .............................................................................. 12

*In re Take Two Interactive Sec. Litig.*,
  No. 06-cv-1131, 2010 WL 11613684 (S.D.N.Y. June 29, 2010) ........................... 21

*In re Vivendi Universal, S.A. Sec. Litig.*,
  No. 02-cv-5571 (S.D.N.Y. Apr. 21, 2017) ............................................................... 9

*Kalnit v. Eichler*,
  99 F. Supp. 2d 327 (S.D.N.Y. 2000),
  *aff'd*, 264 F.3d 131 (2d Cir. 2001) ......................................................................... 16

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
  No. 02-cv-5893 (N.D. Ill. Jun. 20, 2016).................................................................. 9

*Massiah v. MetroPlus Health Plan, Inc.*,
  No. 11-cv-05669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ..................................... 19, 20

*Melito v. Experian Mktg. Sols., Inc.*,
  923 F.3d 85 (2d Cir. 2019)................................................................................................ 21

*Robbins v. Koger Properties, Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ........................................................................................ 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005).............................................................................................. 9, 12

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
  No. 10-cv-0864, 2015 U.S. Dist. LEXIS 73276 (E.D.N.Y. Apr. 17, 2015 ............................ 10

**Statutes**

15 U.S.C. §78u-4(a)(7) ...................................................................................................... 21

**Other Authorities**

CORNERSTONE RESEARCH, *Securities Class Action Settlements: 2020 Review and Analysis*
  (2021), available at https://www.cornerstone.com/wp-content/uploads/2021/12/Securities-
  Class-Action-Settlements-2020-Review-and-Analysis.pdf ...................................................... 15

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... passim

Class representatives ALSAR Ltd. Partnership ("ALSAR"), Plaintiffs Iron Workers Local 40, 362, & 417 – Union Security Funds and Iron Workers Local 580 – Joint Funds (together "Iron Workers," and collectively with ALSAR, "Plaintiffs"), individually and on behalf of all Class Members, respectfully submit this memorandum in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Parties' Stipulation and Agreement of Settlement dated February 4, 2022 (the "Stipulation");[1] (ii) approval of the form and manner of giving notice to Class Members of the proposed Settlement; and (iii) the setting of a Settlement fairness hearing (the "Settlement Hearing") and deadlines for dissemination of Notice, for Class Member objections and exclusion, for the filing of Plaintiffs' motion for Final Approval of the Settlement, and for the filing of Class Counsel's application for an award of attorneys' fees and reimbursement of expenses and compensatory awards to Plaintiffs.

## I.    PRELIMINARY STATEMENT

After litigating this Action for more than four-and-a-half years, Plaintiffs have negotiated a Settlement that provides a strong and immediate recovery to Class Members that is highly favorable in light of the risks of continued litigation. The proposed Settlement will resolve all claims against Defendants in exchange for a cash payment of $44,000,000 (the "Settlement Amount") for the benefit of the Class. Plaintiffs believe that the Settlement Amount represents the majority of what could actually be collected on any award achieved at trial, given the bankruptcy of the corporate defendant, eroding insurance policies, potential insurance coverage challenges, and the limited resources of the Individual Defendants.

---

[1] The "Parties" collectively refers to Plaintiffs, as defined above, together with Defendants Chicago Bridge & Iron Company N.V. ("CB&I"), its former Chief Executive Officer Philip Asherman, its former Chief Financial Officer Ronald Ballschmiede, and its former Chief Accounting Officer Westley Stockton. All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation.

The Settlement was achieved only after defeating Defendants' motion to transfer, motion to dismiss, and motion for summary judgment; completing large-scale discovery; preparing for trial; and engaging in multiple mediation sessions with a highly regarded mediator, the Hon. Layn R. Phillips (Ret.). Although the Action was not resolved during the mediation sessions, negotiations subsequent to the last mediation session (and only weeks before trial was scheduled to begin) resulted in a mediator's proposal to settle the Action for the Settlement Amount, which both sides accepted. The Settlement provides a substantial, immediate, and guaranteed recovery for Class Members. Plaintiffs and Class Counsel believe that the proposed Settlement is fair, reasonable, adequate, and in the Class Members' best interest. Moreover, the proposed content and manner of providing notice satisfies requirements imposed by Fed. R. Civ. P. 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process. For these reasons, the Court should preliminarily approve the Settlement.

## II.     SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.     Factual Background

CB&I was a global engineering, procurement, and construction company headquartered in The Hague, Netherlands, and focused on the energy industry (ECF No. 84). ¶ 34.[2] In July 2012, CB&I agreed to purchase The Shaw Group, a nuclear fabricator, for about $3 billion. *Id.* at ¶ 35. Shaw's subsidiary, Stone & Webster, had contracts to build the first nuclear plants in the United States since Three Mile Island, one in Georgia (Vogtle) and one in South Carolina (V.C. Summer) (the "Nuclear Projects"). *Id.* Both were to be constructed in a partnership or consortium with Westinghouse, which designed the reactors and had a contract with Stone & Webster. *Id.* CB&I told investors that the Nuclear Projects would be accretive and that it had conducted extensive due

---

[2] Citations to "¶__" or "¶¶__" are references to the numbered paragraphs of the Amended Complaint (ECF No. 84).

diligence. *Id.* at ¶¶ 36-37. Although acquiring Shaw vaulted CB&I into a leader in nuclear fabrication, CB&I knew that the Nuclear Projects were seriously troubled. *Id.* at ¶¶ 40-41.

Throughout the Class Period, Defendants made misleadingly optimistic statements to investors about the Nuclear Projects, omitted to disclose known cost overruns and other problems with the Nuclear Projects, booked as revenue disputed claims for which collection was improbable, and claimed to be unaware of any indicators of impairment. *See, e.g.*, ¶¶ 99-175.

Investors became aware of the true state of the Nuclear Projects via skeptical reports from independent analysts Vertical Research and Prescience Point, and from disclosures of CB&I's actual poor performance by the utility companies that owned the Nuclear Projects and by their state regulators. *See, e.g.*, ¶¶ 126-35, 141-43, 153-56. These disclosures caused CB&I's stock to decline significantly. *Id.* Ultimately, understanding that the nuclear business was a liability and not an asset, CB&I agreed to hand it over to Westinghouse for what it called a "quitclaim" – essentially walking away from the business it had previously portrayed as a crown jewel. ¶¶ 176-82.

**B.      Procedural History**

The initial complaint in this Action was filed on March 2, 2017 (ECF No. 1). On May 1, 2017, Lead Plaintiff ALSAR moved to consolidate related actions, to be appointed lead plaintiff, and to appoint its counsel as lead counsel (ECF No. 31). Additional class representatives Iron Workers also moved for appointment (ECF No. 35). After hearing argument on the motion during a June 14, 2017 pre-trial conference, the Court appointed ALSAR to be Lead Plaintiff, and appointed its counsel, Kahn Swick & Foti, LLC as Lead Counsel (ECF No. 68). The Court also consolidated related actions into this Action. *Id.*

Two days later, Defendants moved to transfer the Action from this Court to the Southern District of Texas (ECF No. 69). After full briefing, on July 17, 2017, the Court denied Defendants' motion to transfer (ECF No. 83).

On August 14, 2017, after conducting an extensive private investigation into the underlying claims, Plaintiffs filed their Amended Complaint (ECF No. 84). Defendants moved to dismiss the Amended Complaint (ECF No. 91), which Lead Plaintiff opposed (ECF No. 104). On May 24, 2018, the Court entered an order denying Defendants' motion to dismiss (ECF No. 108).

On June 21, 2018, the Court entered a scheduling order requiring fact discovery to be completed six months later (ECF No. 115). At the scheduling conference, defense counsel indicated that, in addition to any documents to be produced in response to Plaintiffs' forthcoming requests for production, Defendants would be immediately producing to Plaintiffs two terabytes of data exchanged in a prior litigation relating to a dispute between the contractor and owners of the Vogtle project. Because of the enormous number of documents to be reviewed in six months, and the large number of relevant deponents, Plaintiffs immediately served discovery requests, built document review teams, and, after soliciting competitive bids, retained an eDiscovery vendor to provide an advanced AI discovery platform with predictive technology that would allow reviewers to better sift through large quantities of information in the time allotted.

With these processes in place, Plaintiffs promptly began to review over a million pages of documents (a figure that would eventually grow to approximately 1.9 million documents constituting approximately 9 million pages), and to schedule and take depositions. When it became clear to Plaintiffs that large categories of crucial documents appeared to be missing, they promptly raised their discovery concerns with the Court (ECF Nos. 125, 127). On September 21, 2018, the Action was referred to Magistrate Judge Wang for pre-trial proceedings. On October 12, 2018,

Plaintiffs filed a letter motion to the Magistrate Judge Wang seeking an extension of the fact discovery cutoff so that the unproduced discovery could be obtained prior to remaining depositions (ECF Nos. 135, 137). On October 31, 2018, this Court withdrew the referral to Magistrate Judge Wang before the letter motions were addressed by her (ECF No. 139). On November 1, 2018, Plaintiffs raised to this Court the "serious deficiencies" previously raised to but not yet ruled upon by Magistrate Judge Wang (ECF No. 141).

After further conferences between the Parties failed to resolve the discovery deficiencies, on November 7, 2018, Plaintiffs sought a conference with the Court pursuant to Local Rule 37.2 (ECF No. 145). On November 16, 2018, the Court ordered the Parties to consider candidates for appointment as special master to oversee discovery (ECF No. 151). After the Parties failed to agree on a candidate, the Court suggested, and with the Parties' consent, appointed Hon. Shira Scheindlin (Ret.) to serve as Special Master to resolve discovery disputes (ECF Nos. 165, 169).

On January 23, 2019, Judge Scheindlin entered an order extending discovery until August 30, 2019, and scheduling class certification briefing (ECF No. 171). On February 4, 2019, Plaintiffs moved to certify the Class (ECF No. 179). At the same time, Plaintiffs continued their large-scale document review, rescheduled remaining depositions, and briefed discovery disputes for Judge Scheindlin, regularly appearing before her for in-person conferences and arguments (*see, e.g.*, ECF Nos. 186, 189).

Defendants moved to refer class certification to Judge Scheindlin for a report and recommendation (ECF No. 202). Plaintiffs agreed to this referral. After full class certification briefing, the Parties prepared for and participated in an all-day evidentiary hearing, including testimony by each side's expert economist, before Judge Scheindlin on September 5, 2019. After that hearing, the Parties also submitted additional letter briefs to address matters raised during the

hearing and by Judge Scheindlin after the hearing (ECF Nos. 219, 222). On October 18, 2019, Judge Scheindlin issued a 107-page report and recommendation (the "R&R") finding that the Class should be certified, that Plaintiffs should be appointed Class Representatives, and that Lead Counsel should be appointed Class Counsel, but finding that price impact was not shown for any date after January 29, 2015 (ECF No. 217). Defendants promptly objected to the R&R (ECF No. 218), which objection Plaintiffs opposed (ECF No. 221).

On January 21, 2020, CB&I filed for bankruptcy protection. That same day, Plaintiffs provided notice of the bankruptcy to the Court, indicating that consistent with prevailing law, Plaintiffs would continue without delay discovery and prosecution of claims against the other Defendants (ECF No. 230). Plaintiffs resisted efforts by Defendants to halt ongoing prosecution and discovery in favor of CB&I's bankruptcy (ECF No. 233). Ultimately, Defendants withdrew their efforts and agreed to proceed in this Court with respect to all Parties, including CB&I (ECF No. 234).

On January 31, 2020, Plaintiffs served reports from their three experts: economist John Finnerty, Ph.D., opining on loss causation and damages (as well as market efficiency); investment banker William Purcell, opining on the importance to investors of the concealed information; and accountant Harris Devor, opining on accounting-related matters.

On March 23, 2020, the Court entered an Order adopting Judge Scheindlin's R&R and granting class certification (ECF No. 237). Defendants promptly petitioned the United States Court of Appeals for the Second Circuit to hear an interlocutory appeal of this Court's Order pursuant to Fed. R. Civ. P. 23(f), which Plaintiffs opposed. Consistent with Fed. R. Civ. P. 23, Plaintiffs moved the Court to disseminate class notice (ECF No. 239). On April 20, 2020, the Court approved the form and plan of notice proposed by Plaintiffs and the proposed notice administrator (ECF No.

240). On August 11, 2020, the United States Court of Appeals for the Second Circuit denied Defendants' Rule 23(f) petition for interlocutory appeal (ECF No. 251).

On September 4, 2020, Defendants moved for summary judgment (ECF No. 252), which Plaintiffs opposed (ECF No. 264).

On February 22, 2021, Defendants sought (ECF No. 301), and on February 25, 2021 were granted, leave to add bankruptcy-related defenses to their Answers (ECF No. 302). Among other things, these defenses asserted that Plaintiffs were enjoined under the bankruptcy plan from recovery against CB&I and were enjoined under a third-party release entered by the bankruptcy court from recovery against the Individual Defendants without a showing that the claims sounded in "actual fraud" (ECF No. 303). To protect the Class's interests in CB&I's bankruptcy, Class Counsel retained bankruptcy counsel.

On August 23, 2021, the Court entered an Order denying Defendants' motion for summary judgment, except as to one statement (ECF No. 306). Among other things, the summary judgment order found that the claims sounded in "actual fraud," paving the way for claims against Individual Defendants to proceed. *Id.*

On September 22, 2021, this Court entered a scheduling Order setting deadlines, *inter alia*, for motions in *limine* and pre-trial order, and set this case on the ready-for-trial docket beginning February 7, 2022. Pursuant to that schedule, on December 13, 2021, and December 20, 2021, the Parties briefed twenty-five motions in *limine*. Those motions were pending when Plaintiffs informed the Court, on January 6, 2022, that a proposed settlement had been reached (ECF No. 419).

C.     **The Settlement**

On December 15, 2021, with discovery complete, Plaintiffs' claims having survived summary judgment, and with an imminent ready-for-trial setting, the Parties engaged in a full-day

in-person mediation before the Hon. Layn Phillips (Ret.), a highly experienced mediator.[3] While the Parties did not reach a resolution at the mediation session, Judge Phillips thereafter issued a mediator's proposal. The proposal, which both sides accepted on December 31, 2021, called for the settlement of all claims and a full release in exchange for a cash payment of $44,000,000.

Having litigated this Action since 2017, reviewed approximately 9 million pages of documents, taken or defended 32 depositions, and exchanged numerous expert reports, Plaintiffs and their counsel were well-positioned to evaluate the Settlement, as well as the potential risks and benefits of continuing to trial, including the risks of pending *Daubert* motions seeking to exclude two of Plaintiffs' experts, and the risks of sustaining over appeal and collecting a verdict even if they prevailed at trial. Based on this evaluation, Plaintiffs and their counsel agree that the Settlement represents a fair, adequate, and reasonable result for the Class.

While Plaintiffs believe that the merits of their case are strong, Defendants contend that they did not violate the U.S. securities laws, did not act with scienter, and did not cause damages to the Class. Although Plaintiffs believe their claims are well-supported and would prevail at trial, they recognize the possibility that a jury may not return a verdict in their favor or may award damages less than the Settlement Amount. Plaintiffs are also cognizant that Defendants tried a related case by an opt-out plaintiff to a jury, and prevailed. *See infra* at Section III(A)(3)(a). Additionally, a successful verdict at trial could be overturned on appeal, and there is a risk that the insurers would either deny coverage or that the eroding insurance policies would be insufficient to cover a verdict substantially larger than the Settlement Amount.

---

[3] Judge Phillips was the same mediator the Parties had used for an unsuccessful early mediation in 2020.

Plaintiffs have considered the additional costs and likelihood that trial and post-trial proceedings (including appeals and coverage litigation) would further erode insurance coverage and substantially delay any recovery. Indeed, in two PSLRA cases that were tried to a verdict, plaintiffs in both cases did not file a motion for preliminary approval until approximately seven years after their respective juries rendered verdicts in their favor as a result of post-trial proceedings. *See* Class Pls.' Mem. of Law in Supp. of Mot. for Approval of Settlement for Reliance Claimants and for Reimbursement of Additional Expenses, *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02-cv-5571 (S.D.N.Y. Apr. 21, 2017), ECF No. 1313 (motion for preliminary approval filed after appeal and approximately 7.5 years after the jury verdict); *see also* Mem. of P. & A. in Supp. of Pls' Unopposed Mot. for Prelim. Approval of Class Action Settlement, *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-cv-5893 (N.D. Ill. Jun. 20, 2016), ECF No. 2212 (motion for preliminary approval filed approximately 7 years after the jury verdict and after appeal, which reversed the verdict in part and ordered a limited new trial). Given these significant risks, Plaintiffs and their counsel believe that the guaranteed, prompt recovery of the Settlement provides an excellent result and is in the best interest of the Class.

## III.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The Second Circuit recognizes the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012). Courts should approve a class action settlement if it is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013).[4]

---

[4] Unless otherwise noted, all emphasis is added, and internal citations are omitted throughout.

"Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a subsequent 'fairness hearing.'" *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007), *adhered to on reconsideration*, No. 01-cv-3020, 2007 WL 844710 (S.D.N.Y. Mar. 20, 2007). "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice" and "[o]nce preliminary approval is bestowed, the second step of the process ensues: notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (internal quotation marks and citation omitted). "Preliminary approval is not tantamount to a finding that [a proposed] settlement is fair and reasonable. . . . Instead, at this stage, we need only decide whether the terms of the Proposed Settlement are at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-cv-2613, 2014 WL 6851096, at *2 (S.D.N.Y. Dec. 2, 2014) (internal quotation marks and citation omitted). Additionally, "courts should give proper deference to the private consensual decision of the parties," and should bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-cv-0864, 2015 U.S. Dist. LEXIS 73276, at *18 (E.D.N.Y. Apr. 17, 2015).

Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). As set forth below, this Settlement satisfies both prongs. It meets the criteria for final approval expressly enumerated in Rule 23(e)(2), as well as those articulated in *Detroit v. Grinnell Corp.*, 495 F.2d

448 (2d Cir. 1974).

    **A.**    **The Settlement Satisfies the Factors for Final Approval under Rule 23(e)(2) and *Grinnell***

The Settlement is highly beneficial to the Class and satisfies the factors articulated in the recent amendments to Rule 23(e)(2) and *Grinnell*. Under the recent amendments to Rule 23(e)(2), courts assessing approval are to consider whether:

(A)    The class representatives and class counsel have adequately represented the class;

(B)    The proposal was negotiated at arm's length;

(C)    The relief provided for the class is adequate, taking into account:

    (i)    The costs, risks, and delay of trial and appeal;

    (ii)    The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    The terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)    Any agreement required to be identified under Rule 23(e)(3); and

(D)    The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors "add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Courts in the Second Circuit have long considered the following factors, set forth in *Grinnell*, to evaluate "whether a class action settlement is fair, reasonable, and adequate under Rule 23":

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Christine Asia Co. v. Yun Ma*, No. 15-md-02631, 2019 WL 5257534, at *8-9 (S.D.N.Y. Oct. 16, 2019) (citing *Grinnell*, 495 F.2d at 463). While the Second Circuit has not prescribed any set order of consideration, at least one district court has suggested that courts first "consider[] the Rule

23(e)(2) factors, and then consider[] additional Grinnell factors not otherwise addressed by the Rule 23(e)(2) factors." *See Payment Card*, 330 F.R.D. at 29. However, the court should not "engage in a complete analysis at the preliminary approval stage . . . as other courts in this Circuit have held, 'it is not necessary to exhaustively consider the factors applicable to final approval'" when considering preliminary approval. *Id.* at 30 n.24 (quoting *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014)). Indeed, certain factors—such as the reaction of the class to the settlement—will not have sufficient data to thoroughly consider until the final approval stage. *Id.*

### 1.    The Class Was Well-Represented by Class Representatives and their Counsel

Class Representatives and Class Counsel, assisted by Additional Counsel, more than satisfy Rule 23(e)(2)(A)'s "adequate representation" requirement. That requirement focuses mainly on the "alignment of interests between class members." *See Wal-Mart Stores, Inc.*, 396 F.3d at 106-07. Here, Class Representatives' interests (and those of counsel) were fully aligned at all times with the interests of absent Class Members. All bring the exact same claims asserting the same legal theory over the same Class Period. And, because Class Representatives and counsel all "share the common goal of maximizing recovery, there is no conflict of interest[.]" *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006).

Plaintiffs have vigorously litigated this case from the beginning. Plaintiffs, led by Lead Plaintiff ALSAR, have significantly contributed to the Action by overseeing the litigation. Each Plaintiff participated in discovery, proffered a representative witness for an all-day deposition, and participated in settlement discussions with their counsel. And Lead Plaintiff was prepared to be a key witness at trial.

Class Counsel, with the assistance of Additional Counsel working under its direction,

substantially advanced this Action and benefitted the Class. At the pleadings stage, they thoroughly investigated the legal and factual bases for claims against Defendants, including conducting a private investigation, drafted a viable Amended Complaint, and researched and successfully opposed Defendants' motion to dismiss (in addition to successfully opposing Defendants' motion to transfer).

They also advanced the Class's interests by thoroughly conducting discovery, including drafting and serving document requests, subpoenas, and interrogatories; obtaining and reviewing approximately 9 million pages of documents from Defendants as well as additional productions by third-parties; successfully engaging in discovery motions where productions were deficient or claims of privilege were overbroad; taking and defending 32 depositions; and representing the Class at approximately a dozen discovery conferences before the Special Master.

After retaining a world-class expert on market efficiency, Class Counsel and Additional Counsel researched and drafted a viable motion for class certification, and successfully argued class certification at an all-day hearing before the Special Master (as well as in post-hearing briefing). They also successfully overcame Defendants' objections to the Special Master's R&R recommending that certification be granted, and defeated Defendants' Rule 23(f) petition seeking interlocutory review of this Court's class certification opinion.

Plaintiffs and their counsel cleared a path to trial by successfully opposing Defendants' motion for summary judgment, and successfully opposing Defendants' effort to leverage the bankruptcy process to thwart Class claims. They retained bankruptcy counsel to protect the Class's interest in bankruptcy court, prepared witnesses for trial, retained an experienced jury consultant, drafted appropriate motions in *limine* to protect the Class's interests at trial. They also opposed certain motions in *limine* filed by Defendants, and drafted case-specific jury instructions and *voir*

*dire* questions and began crafting their opening statement for the jury. Having cleared a path to trial, they put the Class in the best possible negotiating position when settlement talks resumed in December 2021. They also drafted mediation statements, participated in the full-day mediation and follow-up negotiations that resulted in a Settlement highly favorable to the Class, and negotiated the terms of the Settlement, including the Stipulation and exhibits thereto. Thus, Plaintiffs effectively advanced the interests of the Class throughout this litigation.

### 2. The Settlement Is the Result of Good Faith, Arm's Length Negotiations

A settlement that is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation" enjoys a "presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also* Fed. R. Civ. P. 23(e)(2)(B). In such circumstances, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd sub nom. In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997). Additionally, a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). Here, the Settlement was the result of extensive arm's length negotiations, culminating in a mediator's proposal after two full-day mediation sessions before a highly regarded and experienced mediator.

### 3. The Settlement Is an Excellent Result for the Class

The Settlement provides an excellent result and immediate recovery for the Class, and is fair, reasonable, and adequate considering "the costs, risks, and delay of trial and appeal" and other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The Settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and

weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd sub nom. In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145 (2d Cir. 1987).

Here, the Settlement provides a cash payment of $44,000,000 for the benefit of the Class. This is an excellent result, especially given the significant risks of continued litigation and the low possibility that a substantially higher verdict, even if awarded at trial and sustained on appeal, could actually be collected. After consulting with an econometric expert, Plaintiffs and their counsel believe that a successful verdict on all claims could result in aggregated damages to the Class as high as $701 million. However, only a small fraction of that amount could actually be collected should Plaintiffs prevail at trial, post-trial appeals, and any coverage litigation, due to the bankruptcy reorganization of CB&I that would limit any corporate recovery to the remainder of rapidly eroding insurance policies and the limited wealth of the Individual Defendants. Trial could also limit actual damages. Even if Plaintiffs prevailed, a jury might not accept that the entirety of the decline in stock price on each disclosure date was caused by the alleged fraud.

Even without discounting the unique risks to collectability and loss causation, the Settlement in this Action is favorable compared to other securities fraud class actions with similar damages. Plaintiffs estimate that this recovery represents approximately 6.28% of aggregate damages had they prevailed at trial. According to Cornerstone Research, between 2011-2019, securities class actions with damages of $500-999 million had a median recovery of 3.3% of damages, and in 2020 had a median recovery of 2.6% of damages. *See* CORNERSTONE RESEARCH, *Securities Class Action Settlements: 2020 Review and Analysis* at 6, (2021), available at https://www.cornerstone.com/wp-content/uploads/2021/12/Securities-Class-Action-Settlements-2020-Review-and-Analysis.pdf; *see also In re China Sunergy Sec. Litig.*, No. 07-cv-7895, 2011

WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("the average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses") (internal quotation marks omitted); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, No. 02-mdl-1484, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (a recovery of approximately 6.25% was "at the higher end of the range of reasonableness of recovery in class action[] securities litigations").

### a. The costs, risks and delay of trial and appeal support approval

The recovery is a strong result for the Class when considered on its own, and highly favorable when weighed against the risks of continued litigation. Although Plaintiffs have successfully prosecuted this case through the summary judgment stage, there can be no assurance that they would prevail at trial. Plaintiffs are cognizant that Defendants tried a related case in Texas state court to a jury verdict in their favor. Even though Plaintiffs believe there are significant differences here that would lead to a different result, there can be no assurance that the jury would find that Defendants made misrepresentations, acted with scienter, or that those misrepresentations were the cause of investor losses. *See, e.g.*, *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 264 F.3d 131 (2d Cir. 2001). Moreover, prevailing at trial would not necessarily result in a larger recovery. The jury could award a smaller amount of damages, or the verdict could be appealed. *See, e.g.*, *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs against an accounting firm and entering judgment for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning securities fraud class action jury verdict for plaintiffs in a case tried in 1988 on the basis of a Supreme Court opinion handed down in 1994).

### b.      Other Rule 23(e)(2)(C) factors support approval

Rule 23(e)(2)(C) also states that adequacy should be assessed in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims[,]" "the terms of any proposed award of attorney's fees, including timing of payment[,]" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports approval.

First, the Settlement calls for an experienced Settlement Administrator to process claims and distribute the Net Settlement Fund pro-rata to the Class Members according to the defined Plan of Allocation using procedures that are well-established and have been proved effective in securities fraud litigation. A.B. Data, Ltd., the Settlement Administrator selected by Class Counsel after a competitive bidding process (subject to Court approval), will process claims under the guidance of Class Counsel and provide the Class Members with a reasonable opportunity to cure deficiencies in their claims. Thereafter, A.B. Data, Ltd. will audit the claims received and evaluate the proposed distribution according to the Plan of Allocation, and Class Counsel will then move the Court for an order of distribution permitting checks to be mailed to eligible claimants.[5]

Second, as disclosed in the Notice, Class Counsel, who have not been paid to-date, will apply for a fee award not to exceed one-third of the Gross Settlement Fund. Such a fee would be reasonable for the work performed and the results obtained and consistent with awards in similar complex class action cases. *See, e.g.*, *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 497 (S.D.N.Y. 2017), *aff'd sub nom. Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63 (2d Cir. 2019) (approving 33 1/3% fee award and stating "courts routinely award a

---

[5] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Gross Settlement Fund based on the number or value of the claims submitted.

percentage amounting to approximately 1/3"); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-cv-2548, 2019 WL 4734396, at *6 (S.D.N.Y. Sept. 23, 2019) (awarding one-third of a $75 million settlement); *In re Cnova N.V. Sec. Litig.*, No. 16-cv-04444 (S.D.N.Y. March 20, 2018) (awarding one-third of a $28.5 million settlement). Here, the fee request follows "years of litigation . . . . This is not a class action that was settled early on, with only minimal or preliminary discovery. The case involved a substantial expenditure of time and effort by Lead Counsel. The case was complicated. And the risks of continuing litigation were substantial." *City of Providence v. Aeropostale, Inc.*, No. 11-cv-7132, 2014 WL 1883494, at *12 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (collecting cases and awarding 33% of $15 million settlement fund); *Hayes v. Harmony Gold Min. Co.*, No. 08-cv-03653, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011), *aff'd*, 509 F. App'x 21 (2d Cir. 2013) (noting that attorneys' fee of one-third of the $9 million settlement amount was fair, reasonable and adequate).

Third, to protect the Settlement and the Class, the Parties have placed the terms under which Defendants may terminate the Settlement if a certain threshold of Class Members submit valid and timely requests for exclusion into a separate confidential agreement. Such an agreement "is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *See, e.g.*, *Christine Asia Co.*, 2019 WL 5257534, at *15.

### 4.      The Settlement Treats All Class Members Equitably

The Settlement easily satisfies the Rule 23(e)(2)(D) criteria that the Settlement treat class members equitably relative to one another. Under the proposed Plan of Allocation, each Authorized Claimant will receive a pro-rata share of the Net Settlement Fund, which shall be the Authorized Claimant's Recognized Loss divided by the total of Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See, e.g.*, *In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369,

386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

**B.     The Remaining *Grinnell* Factors Support Approval**

The additional factors articulated in *Grinnell* include: the stage of the proceedings and the

amount of discovery completed; the ability of the defendants to withstand a greater judgment; and

the range of reasonableness of the settlement fund in light of the best possible recovery and the

risks of litigation. Here, each supports approval.[6] However, "a court need not find that every factor

militates in favor of a finding of fairness; rather, a court consider[s] the totality of these factors in

light of the particular circumstances." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124,

134 (S.D.N.Y. 2008) (internal quotation marks and citation omitted).

First, the stage of the proceedings favors approval. This factor assesses "whether counsel

had an adequate appreciation of the merits of the case before negotiating." *Massiah v. MetroPlus

Health Plan, Inc.*, No. 11-cv-05669, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) (internal

quotation marks and citation omitted). Here, after four-and-a-half years of litigation, completing

extensive fact and expert discovery (including review of approximately 1.9 million documents and

taking 32 depositions), successfully opposing Defendants' motions to transfer, to dismiss, and for

summary judgment, as well as discovery motions, and having thoroughly prepared for trial

including consulting with a well-known trial consultant, Plaintiffs and Class Counsel are ideally

situated to evaluate the merits of the Settlement and appreciate the strengths and weaknesses they

would face at trial. *See supra* at Section III(A)(1).

Second, the low probability that Plaintiffs could collect on a judgment substantially larger

than the Settlement Amount "weighs heavily in favor of approving the settlement," especially

where, as here, the corporate defendant declared bankruptcy and insurance coverage would be

---

[6] One remaining *Grinnell* factor, the reaction of the Class, cannot meaningfully be assessed until Notice is disseminated and will be addressed at a later stage.

further depleted by defense costs (and likely substantially) if litigation proceeded to trial and appeal. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014); *see also Massiah*, 2012 WL 5874655, at *5 ("risk of collection weighs in favor of final approval, because the settlement decreases the risk of collection").

Finally, the Settlement is within the range typically found reasonable relative to the maximum prospective recovery. Reasonableness must be judged "in light of the strengths and weaknesses of plaintiffs' case" not "the best of all possible worlds." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. at 762. Here, the $44 million recovery is reasonable even before considering potential impediments to continued litigation of this Action and is an excellent recovery after considering such risks.

## IV.   THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED

The proposed Plan of Allocation, which is detailed in the Notice to be provided to the Class Members, will govern how the Settlement proceeds will be distributed among Class Members who timely file a valid Proof of Claim. A plan of allocation, "particularly if recommended by experienced and competent class counsel," should be approved so long as it is "fair and adequate" and "ha[s] a reasonable, rational basis." *Christine Asia Co.*, 2019 WL 5257534, at *15. The proposed Plan of Allocation was prepared by Class Counsel and Additional Counsel after consulting with experts, and rationally reflects the allegations and causes of action asserted in this case as well as the Court's rulings. It will result in a fair and equitable distribution of the proceeds among Class Members who submit valid claims and does not preference Plaintiffs. Each will receive no more or less than his or her pro-rata share of the Net Settlement Fund based on recognized losses assessed by the formula described in the Notice.

## V.   THE COURT SHOULD APPROVE THE PROPOSED PLAN OF NOTICE

Rule 23(c)(2) directs that the notice be "the best notice that is practicable under the

circumstances" (Fed. R. Civ. P. 23(c)(2)(B)) and Rule 23(e) directs "notice in a reasonable manner" (Fed. R. Civ. P. 23(e)(1)(B)). Pursuant to the PSLRA, the notice must also include an explanation of the plaintiffs' recovery. *See In re Take Two Interactive Sec. Litig.*, No. 06-cv-1131, 2010 WL 11613684, at *12–13 (S.D.N.Y. June 29, 2010) (quoting 15 U.S.C. §78u-4(a)(7)). The notice must also "fairly apprise[] the prospective members of the class of the terms of the proposed settlement and of the options that [are] open to them in connection with the proceedings." *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 95 (2d Cir. 2019).

Plaintiffs' proposed Plan of Notice satisfies these standards. As specified by Rule 23(c)(3) and 15 U.S.C. §78u-4(a)(7), the Notice describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and status of the litigation; (2) the definition of the certified Class and who is excluded; (3) the reasons for settling; (4) the amount of the Gross Settlement Fund; (5) the Class's claims and issues raised in this Action; (6) the Parties' disagreement over damages and liability; (7) the maximum amount of attorneys' fees and expenses that Class Counsel may seek; (8) the maximum amount that may be requested as a reimbursement award to Class Representatives; and (9) the plan for allocating the Settlement proceeds to the Class. *See* Stipulation at Ex. A-1. The Notice also describes the process for seeking exclusion from the Class, or for objecting to the Settlement, Plan of Allocation, or requests for awards of fees and expenses. *Id.*

Here, after the litigation Class was certified, Class Members were provided actual notice of the pendency of the class action, and a notice administration website was set up. *See, e.g.*, ECF No. 240. To provide notice of the Settlement, the proposed Preliminary Approval Order directs that within 14 calendar days after entry of the Preliminary Approval Order, the Settlement Administrator shall cause the Postcard Notice to be mailed to all Class Members who can be

identified with reasonable effort providing key information and directing them to the Notice (or to be emailed such information and a link to the Notice), both for shareholders of record and, for shares held in street name, through the brokers that serve as their nominees. *See* Proposed Order, attached as Exhibit A to the Stipulation, at ¶ 7(a). In addition, a Summary Notice will be published twice on a national business newswire within 21 calendar days after the mailing of the Postcard Notice begins. *Id.* at ¶ 7(b). All key Settlement documents will also be posted on the website and made available by email or toll-free telephone number. *Id.* at ¶¶ 7(a)-(b). Accordingly, the proposed Plan of Notice meets all the requirements of due process, the PSLRA, and the Federal Rules of Civil Procedure.

## VI.     PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs respectfully proposes the schedule set forth below for Settlement-related events. The specific timing of events is determined by the date on which the Settlement Hearing is scheduled. In order to allow sufficient time for the Notice to be disseminated to the potential Class Members, Plaintiffs respectfully requests that the Court schedule the Settlement Hearing at the Court's convenience but for a date not earlier than 100 calendar days after entry of the Preliminary Approval Order.

| EVENT | PROPOSED DUE DATE |
|---|---|
| Deadline for notice to Class Members by either: (a) emailing the Summary Notice to Class Members for whom the Claims Administrator is able to obtain email addresses; or (b) mailing the Postcard Notice, if an email address cannot be obtained, by first class mail, postage prepaid<br><br>(Preliminary Approval Order ¶ 23) | 14 calendar days after entry of Preliminary Approval Order |
| Deadline for the publication of the Summary Notice twice in nationally distributed, business-focused newswires<br><br>(Preliminary Approval Order ¶ 23) | 21 calendar days after entry of Preliminary Approval Order |
| Deadline for filing of papers in support of the Settlement, the Plan of Allocation, and Fee and Expense Application<br><br>(Preliminary Approval Order ¶ 23) | 30 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections<br><br>(Preliminary Approval Order, ¶ 23) | 21 calendar days prior to Settlement Hearing |
| Postmark deadline for submitting a Proof of Claim<br><br>(Preliminary Approval Order ¶ 10) | 14 calendar days prior to Settlement Hearing |
| Deadline for filing responses to any objections or in further support of the Settlement, the Plan of Allocation, and the Fee and Expense Application<br><br>(Preliminary Approval Order, ¶ 23) | 7 days prior to the Settlement Hearing |
| Settlement Hearing<br><br>(Preliminary Approval Order, ¶ 23) | To be determined by the Court, approximately 100-105 days after entry of the Preliminary Approval Order |

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court: (1) grant preliminary approval of the proposed Settlement; (2) approve the Plan of Allocation; (3) approve the proposed form and manner of notice; and (4) schedule a Settlement Hearing.

DATED: February 4, 2022     Respectfully submitted,

**KAHN SWICK & FOTI, LLC**

 /s/ *Kim E. Miller*
Kim E. Miller (KM-6996)
J. Ryan Lopatka (*admitted PHV*)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3730
Fax: (504) 455-1498
Email: kim.miller@ksfcounsel.com
Email: j.lopatka@ksfcounsel.com

-and-

Lewis S. Kahn
Craig J. Geraci, Jr. (*admitted PHV*)
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Fax: (504) 455-1498
Email: lewis.kahn@ksfcounsel.com
Email: craig.geraci@ksfcounsel.com

*Lead Counsel for Lead Plaintiff ALSAR Ltd.*
*Partnership and Class Counsel*

**POMERANTZ LLP**
Joshua B. Silverman (*admitted PHV*)
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Email: jbsilverman@pomlaw.com

-and-

Jeremy A. Lieberman
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
Email: jalieberman@pomlaw.com

*Counsel for Additional Plaintiffs Iron Workers Local 40, 361, & 417 – Union Security Funds and Iron Workers Local 580 – Joint Funds and the Class*

## <u>CERTIFICATE OF SERVICE</u>

On February 4, 2022, the foregoing document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Kim E. Miller*
Kim E. Miller
