**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| | ) |
| | )    **CASE NO. 1:17-CV-1580** |
| IN RE CHICAGO BRIDGE & IRON | ) |
| COMPANY N.V. SECURITIES LITIGATION | )    Hon. Lorna Schofield |
| | ) |
| | ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**KAHN SWICK & FOTI, LLC**
Kim E. Miller (KM-6996)
J. Ryan Lopatka (*admitted PHV*)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (504) 455-1400
Fax: (504) 455-1498

Lewis S. Kahn
Craig J. Geraci, Jr. (*admitted PHV*)
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Fax: (504) 455-1498

*Lead Counsel for Lead Plaintiff*
*ALSAR Ltd. Partnership and*
*Class Counsel*

**POMERANTZ LLP**
Joshua B. Silverman (*admitted PHV*)
10 South La Salle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Fax: (312) 229-8811

*Counsel for Additional Plaintiffs and*
*Class Representatives Iron Workers Local*
*40, 361, & 417 – Union Security Funds*
*and Iron Workers Local 580 – Joint*
*Funds*

## <u>TABLE OF CONTENTS</u>

**Page:**

I.   PRELIMINARY STATEMENT ............................................................... 1

II.  PROCEDURAL HISTORY OF THE LITIGATION ................................................. 3

III. ARGUMENT ......................................................................... 9

   1.   The Settlement Warrants Final Approval ........................................... 9

   2.   The Settlement Was Achieved By Arm's-Length Negotiation And
      Is Presumed Fair .................................................................. 10

   3.   The Grinnell Factors Confirm that the Settlement is Substantively Fair ......... 13

      a)   The Complexity, Expense, Likely Duration of Litigation, the Risks of
        Establishing Liability and Damages and Maintaining the Class Action
        Through Trial, all Support Final Approval ................................... 13

      b)   The Class's Reaction Was Overwhelmingly Positive ......................... 15

      c)   The Stage of Proceedings and Maturity of Underlying Substantive Issues
        Supports Final Approval .................................................... 16

      d)   The Risks of Establishing Liability and Damages Support Final Approval .... 17

      e)   The Risks of Maintaining Class Certification Support Final Approval ....... 19

      f)   Defendants' Ability to Withstand a Greater Judgment ....................... 19

      g)   Range of Reasonableness of Settlement Fund ............................... 20

   4.   The Settlement Meets All the Requirements of Rule 23(e) ........................ 21

IV.  THE PLAN OF ALLOCATION SHOULD BE APPROVED ............................................ 23

V.   NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS ............................. 24

VI.  CONCLUSION ........................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s):**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ............................................ 15

*Athale v. Sinotech Energy Ltd.*,
  No. 11-cv-05831, 2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) ............ 18

*Bano v. Union Carbide Corp.*,
  273 F.3d 120 (2d Cir.2001) ............................................. 9

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  No. 07-cv-2207, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) .............. 19

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ................................................... 10

*Castagna v. Madison Square Garden, L.P.*,
  No. 09-cv-10211, 2011 WL 2208614 (S.D.N.Y. June 7, 2011) ............. 17

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) .................................... 19

*Christine Asia Co. v. Yun Ma*,
  No. 15-MD-2631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............ 23

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .......................... 10, 13, 17, 20, 21

*City of Providence v. Aeropostale, Inc.*,
  No. 11-cv-7132, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014),
  *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ... 15

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ........................................ 11, 20

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) .................................................. 18

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .................................................. 24

*Fleisher v. Phoenix Life Ins. Co.*,
  No. 11-cv-8405, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .......... 10, 23

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ......................................... 14

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ........................................... 13

*Grant v. Bethlehem Steel Corp.*,
  823 F.2d 20 (2d Cir. 1987) ........................................... 16

*Guevoura Fund Ltd. v. Sillerman*,
  No. 15-cv-07192, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019). ......................................... 14, 15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ...................................................................................... 26

*In re AOL Time Warner, Inc.*,
  No. 02-cv-5575, 2006 WL 903236 (S.D.N.Y. April 6, 2006) ................................................. 20

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................................... 15, 19, 20

*In re China Sunergy Sec. Litig.*,
  No. 07-cv-7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ............................................... 21

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) ............................................................................... 13

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
  *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016).................................... 18

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151, 162 (S.D.N.Y. 2011) ............................................................................... 20

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................ 17, 18

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-cv-8557, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ............................................... 13

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) .............................................................................. 18, 19, 23

*In re Initial Pub. Offering Sec. Litig.*,
  226 F.R.D. 186 (S.D.N.Y. 2005) ........................................................................................ 9

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) ....................................................................................... 18

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009) ............................................................................... 21

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................................................... 13

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
  No. 02 MDL 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007).............................................. 21

*In re NQ Mobile, Inc. Secs. Litig.*,
  No. 13-cv-7608, 2016 U.S. Dist. LEXIS 189606 (S.D.N.Y. Mar. 11, 2016)............................... 9

*In re PaineWebber Ltd. Partnerships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997).............................................. 10

*In re PPDAI Grp. Inc. Sec. Litig.*,
  No. 18-cv-6716, 2022 WL 198491, (E.D.N.Y. Jan. 21, 2022)................................................ 23

*In re Ramp Corp. Sec. Litig.*,
　No. 05-cv-6521, 2008 WL 58938 (S.D.N.Y. Jan. 3, 2008) ...................................... 9

*In re Vivendi Universal, S.A. Sec. Litig.*,
　765 F. Supp. 2d 512 (S.D.N.Y. 2011), *aff'd sub nom*
　*In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) .................................... 14

*In re Warner Commc'ns Sec. Litig.*,
　618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) .................................... 14

*Joel A. v. Giuliani*,
　218 F.3d 132 (2d Cir. 2000) ........................................................................... 9

*Lyons v. Marrud, Inc.*,
　No. 66-0415, 1972 WL 327 (S.D.N.Y. June 6, 1972) ............................................ 11

*Maley v. Del Glob. Techs. Corp.*,
　186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................ 19

*Menkes v. Stolt-Nielsen S.A.*,
　No. 03-cv-0409, 2011 WL 13234815 (D. Conn. Jan. 25, 2011) .................................. 16

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
　No. 08-cv-5310, 2019 WL 13150344 (S.D.N.Y. Mar. 8, 2019),
　*aff'd as modified sub nom. New Jersey Carpenters Health Fund v. NovaStar Mortg., Inc.*,
　28 F.4th 357 (2d Cir. 2022) .......................................................................... 17

*Pantelyat v. Bank of Am., N.A.*,
　No. 16-cv-8964, 2019 WL 402854 (S.D.N.Y. Jan. 31, 2019) .................................. 20

*Parker v. Time Warner Entm't Co.*,
　631 F. Supp. 2d 242 (E.D.N.Y. 2009), *aff'd sub nom. Lobur v. Parker*,
　378 F. App'x 63 (2d Cir. 2010) ................................................................ 16, 17

*Thompson v. Metro. Life Ins. Co.*,
　216 F.R.D. 55 (S.D.N.Y. 2003) ................................................................ 10, 13

*Vaccaro v. New Source Energy Partners L.P.*,
　No. 15-cv-8954, 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .............................. 16, 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
　396 F.3d 96 (2d Cir. 2005) ................................................................ 9, 15, 17, 21

## Rules

Fᴇᴅ. R. Cɪv. P. 23 ............................................................................. 22, 24

## Other Authorities

Mᴀɴᴜᴀʟ ꜰᴏʀ Cᴏᴍᴘʟᴇx Lɪᴛɪɢᴀᴛɪᴏɴ (Tʜɪʀᴅ) § 30.42 (1995) ...................................... 10

*Securities Class Action Settlements: 2020 Review and Analysis* (2021), *available at*
　https://www.cornerstone.com/wp-content/uploads/2021/12/Securities-Class-Action-

Settlements-2020-Review-and-Analysis.pdf ........................................................................ 22

William Rubenstein, Alba Conte, & Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS
§ 13.44 (5th ed. 2014) .............................................................................................................. 10

Class Representative and Lead Plaintiff ALSAR Ltd. Partnership ("ALSAR"), together with Additional Plaintiffs and Class Representatives Iron Workers Local 40, 362, & 417 – Union Security Funds and Iron Workers Local 580 – Joint Funds (together "Iron Workers" and collectively with ALSAR, "Plaintiffs" or "Class Representatives"), respectfully submit this Memorandum of Law in support of their motion for final approval pursuant to Fed. R. Civ. P. 23(e) of a $44 million settlement (the "Settlement") of this securities fraud class action filed on behalf of purchasers of securities in Chicago Bridge & Iron Company N.V., ("CB&I" or the "Company") during the period October 30, 2013, through June 23, 2015, both dates inclusive ("Class Period"), between Plaintiffs and CB&I, Philip Asherman, Ronald Ballschmiede, and Westley Stockton (collectively, "Defendants"). The terms of the Settlement are set forth in the Stipulation of Settlement dated February 4, 2022 ("Stipulation") (ECF No. 423), preliminarily approved by this Court on March 30, 2022 (ECF No. 428).[1]

## I.   PRELIMINARY STATEMENT

After more than five years of litigation, Plaintiffs propose that this Court: (1) finally approve a $44 million cash settlement that will dispose of all claims in this Action; (2) find that the Notice plan it approved at preliminary approval met all applicable requirements; and (3) approve the Plan of Allocation for the disbursement of the proceeds among Class Members.[2]

The $44 million Settlement is fair, reasonable, adequate, and an excellent result for the Class. After ALSAR was appointed Lead Plaintiff and filed its Amended Complaint (the "Amended Complaint"), Defendants promptly moved to dismiss. On May 24, 2018, after Plaintiffs and Defendants (collectively, the "Parties") fully briefed Defendants' motion to

---

[1] All capitalized terms not otherwise defined herein are defined in the Stipulation.

[2] A memorandum in support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses and Compensatory Awards for Plaintiffs is filed concurrently herewith.

1

dismiss, the Court entered an order denying Defendants' motion (the "MTD Order"). *See* ECF No. 108. Plaintiffs then engaged in extensive discovery, including exchanging initial disclosures, issuing multiple sets of requests for production of documents and interrogatories to Defendants, issuing many third-party subpoenas, conducting numerous depositions, and reviewing and analyzing over 1.9 million documents constituting approximately 9 million pages. Plaintiffs subsequently moved for class certification and obtained a Report & Recommendation from the appointed Special Master, the Hon. Shira Scheindlin (Ret.), finding that the Class should be certified, which this Court later adopted. *See* ECF Nos. 217, 237. As the Action neared trial, Plaintiffs consulted with a well-known trial consultant regarding *voir dire* and themes for trial, prepared trial strategies, video deposition excerpts for use at trial, witness outlines, direct and cross examination outlines, witness and exhibit lists, and an opening statement. Lead Counsel also began preparing Plaintiffs and Plaintiffs' experts to testify at trial. Approximately 5 weeks before trial, the Parties engaged in a second full-day mediation before the Hon. Layn Phillips (Ret.) – a highly experienced mediator. Although the Parties did not then reach a resolution, Judge Phillips thereafter issued a mediator's proposal calling for the settlement of all claims and a full release in exchange for a cash payment of $44,000,000. Both sides accepted the proposal on December 31, 2021.

While Plaintiffs believe their claims are well-supported and would prevail at trial, they recognize the possibility that a jury may not return a verdict in their favor or may award damages less than the Settlement Amount. Plaintiffs are also cognizant that Defendants tried a related case by an opt-out plaintiff to a jury and prevailed. Additionally, a successful verdict at trial could be overturned on appeal, and even if sustained there is a risk that the insurers would either deny coverage or that the eroding insurance policies would be insufficient to cover a verdict

substantially larger than the Settlement Amount. Plaintiffs also faced risks even if they won on appeal. In particular, continuing the litigation risked draining the limited resources available to compensate investors and would certainly substantially delay any recovery. The Settlement provides the Class with a meaningful and immediate recovery.

The Settlement recovers approximately 6.28% of Plaintiffs' maximum recoverable damages. And if less than 100% of Class Members file claims, the actual percentage of recovery will be higher. As described herein, the Settlement far exceeds the median recovery for class action settlements in cases of this size and provides an excellent result for the Class, especially considering the bankruptcy of the corporate Defendant.

The Court's Preliminary Approval Order established a detailed plan to provide notice to the Class, which Plaintiffs and the Claims Administrator followed. While the time to object to the Settlement has not passed, no Class Members have objected to the Settlement, and just two putative Class Members have requested exclusion from the Class. The Settlement is fair, reasonable, and adequate. Moreover, the Plan of Allocation treats all Class Members equally.

Thus, Plaintiffs respectfully request that the Court: (a) finally approve the Settlement; (b) finally approve the Notice Plan; and (c) finally approve the Plan of Allocation.

## II.  PROCEDURAL HISTORY OF THE LITIGATION

The initial complaint in this Action was filed on March 2, 2017. *See* ECF No. 1. On May 1, 2017, Lead Plaintiff ALSAR moved to consolidate related actions, to be appointed lead plaintiff, and to appoint its counsel, Kahn Swick & Foti, LLC ("KSF"), as lead counsel. *See* ECF No. 31. Additional Plaintiffs and Class Representatives Iron Workers also moved for appointment. *See* ECF No. 35. After hearing argument on the motion during a June 14, 2017 pre-trial conference, the Court appointed ALSAR to be Lead Plaintiff and appointed KSF as Lead Counsel. *See* ECF No. 68. Prior to that ruling, ALSAR and Iron Workers entered into a joint

prosecution agreement. *See* ECF No. 237 at 19-20. The Court also consolidated related actions into this Action. *Id.* Two days later, Defendants moved to transfer the Action from this Court to the Southern District of Texas. *See* ECF No. 69. After full briefing, on July 17, 2017, the Court denied Defendants' motion to transfer. *See* ECF No. 83. On August 14, 2017, after conducting an extensive private investigation into the underlying claims, Plaintiffs filed their Amended Complaint. *See* ECF No. 84.

The Amended Complaint alleges that in July 2012 CB&I agreed to purchase The Shaw Group ("Shaw"), a nuclear fabricator, for approximately $3 billion, and that Shaw's subsidiary, Stone & Webster, had contracts to build the first nuclear plants in the United States since Three Mile Island: one in Georgia (Vogtle) and one in South Carolina (V.C. Summer) (the "Nuclear Projects"). Unknown to investors, however, the Nuclear Projects were seriously troubled, as the profitability of the Nuclear Projects deteriorated over time and schedules became increasingly delayed. The Amended Complaint further alleges that, throughout the Class Period, Defendants made misleadingly optimistic statements to investors about the Nuclear Projects, omitted to disclose known cost overruns and other problems with the Nuclear Projects, booked as revenue disputed claims for which collection was improbable, and claimed to be unaware of any indicators of impairment. According to the Amended Complaint, Defendants' misrepresentations violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.

On October 5, 2017, Defendants moved to dismiss the Amended Complaint. *See* ECF Nos. 91-93. On May 24, 2018, this Court entered an order denying Defendants' motion to dismiss. *See* ECF No. 108. On June 21, 2018, the Court entered a scheduling order requiring fact discovery to be completed six months later. *See* ECF No. 115. At the scheduling conference, Defense Counsel indicated that, in addition to any documents to be produced in response to

Plaintiffs' forthcoming requests for production, Defendants would immediately produce to Plaintiffs two terabytes of data exchanged in a prior litigation relating to a dispute between CB&I and the owners of the Vogtle project. Because of the enormous number of documents to be reviewed in six months, and the large number of relevant deponents, Plaintiffs immediately served discovery requests, built document review teams, and, after soliciting competitive bids, retained an e-Discovery vendor to provide an advanced AI discovery platform with predictive technology that would allow reviewers to better sift through large quantities of information in the time allotted.

With these processes in place, Plaintiffs promptly began to review over a million pages of documents (a figure that would eventually grow to approximately 1.9 million documents constituting approximately 9 million pages), and to schedule and take depositions. When it became clear to Plaintiffs that large categories of crucial documents appeared to be missing from Defendants' productions, they promptly raised their discovery concerns with the Court. *See* ECF Nos. 125, 127. On September 21, 2018, the Action was referred to Magistrate Judge Wang for pre-trial proceedings. On October 12, 2018, Plaintiffs filed a letter motion to Magistrate Judge Wang seeking an extension of the fact discovery cutoff so that the unproduced discovery could be obtained prior to remaining depositions. *See* ECF Nos. 135, 137. On October 31, 2018, this Court withdrew the referral to Magistrate Judge Wang before the letter motions were ruled upon. *See* ECF No. 139. On November 1, 2018, Plaintiffs raised to this Court the "serious deficiencies" previously raised to Magistrate Judge Wang. *See* ECF No. 141.

After further conferences between the Parties failed to resolve the discovery deficiencies, on November 7, 2018, Plaintiffs sought a conference with the Court pursuant to Local Rule 37.2. *See* ECF No. 145. On November 16, 2018, the Court ordered the Parties to consider candidates

for appointment of a special master to oversee discovery. *See* ECF No. 151. After the Parties failed to agree on a candidate, the Court suggested, and with the Parties' consent appointed, the Hon. Shira Scheindlin (Ret.) to serve as Special Master to resolve discovery disputes. *See* ECF Nos. 165, 169.

On January 23, 2019, Judge Scheindlin entered an order extending discovery until August 30, 2019 and scheduling class certification briefing. *See* ECF No. 171. On February 4, 2019, Plaintiffs moved to certify the Class. *See* ECF No. 179. At the same time, Plaintiffs continued their large-scale document review, rescheduled remaining depositions, and briefed discovery disputes for Judge Scheindlin, regularly appearing before her for in-person conferences and arguments. *See, e.g.*, ECF Nos. 186, 189.

Defendants then moved to refer class certification to Judge Scheindlin for a report and recommendation. *See* ECF No. 202. Plaintiffs agreed to this referral. After full class certification briefing, the Parties participated in an all-day evidentiary hearing before Judge Scheindlin on September 5, 2019, which hearing included testimony by each side's expert economist. Subsequently the Parties submitted additional letter briefs to address matters raised during the hearing and by Judge Scheindlin after the hearing. *See* ECF Nos. 219, 222. On October 18, 2019, Judge Scheindlin issued a 107-page Report & Recommendation (the "R&R") finding that the Class should be certified, that Plaintiffs should be appointed Class Representatives, and that Lead Counsel should be appointed Class Counsel, but finding that price impact was not shown for any date after January 29, 2015. *See* ECF No. 217. Defendants promptly objected to the R&R (ECF No. 218), which objection Plaintiffs opposed. *See* ECF No. 221.

On January 21, 2020, CB&I's successor filed for bankruptcy protection as part of the bankruptcy of McDermott International, Inc. ("McDermott"). That same day, Plaintiffs provided

notice of the bankruptcy to the Court indicating that, consistent with prevailing law, Plaintiffs would continue discovery and prosecution of claims against the non-bankrupt Individual Defendants. *See* ECF No. 230. Plaintiffs resisted Defendants' efforts to halt ongoing prosecution and discovery in favor of McDermott's bankruptcy. *See* ECF No. 233. Ultimately, Defendants withdrew their efforts and agreed to proceed in this Court with respect to all Parties. *See* ECF No. 234.

On January 31, 2020, Plaintiffs served reports from their three experts: economist John Finnerty, Ph.D., opining on loss causation and damages (as well as market efficiency); investment banker William Purcell, opining on the importance of the concealed information from an investment banking perspective; and accountant Harris Devor, opining on accounting-related matters.

On March 23, 2020, the Court entered an Order largely adopting Judge Scheindlin's R&R and granting class certification. *See* ECF No. 237. Defendants promptly petitioned the United States Court of Appeals for the Second Circuit for interlocutory appeal pursuant to Fed. R. Civ. P. 23(f). Plaintiffs opposed. Consistent with Fed. R. Civ. P. 23, Plaintiffs moved the Court to disseminate class notice. *See* ECF No. 239. On April 20, 2020, the Court approved the form and plan of notice, as well as Plaintiffs' proposed notice administrator. *See* ECF No. 240. On August 11, 2020, the United States Court of Appeals for the Second Circuit denied Defendants' Rule 23(f) petition for interlocutory appeal. *See* ECF No. 251.

On September 4, 2020, Defendants moved for summary judgment. *See* ECF No. 252. Plaintiffs opposed. *See* ECF No. 264.

On February 22, 2021, Defendants sought (ECF No. 301), and on February 25, 2021 were granted (ECF No. 302), leave to amend their Answers to add certain bankruptcy-related

defenses. Among other things, these defenses asserted that Plaintiffs were enjoined under the bankruptcy plan from recovery against CB&I and were enjoined under a third-party release entered by the bankruptcy court from recovery against the Individual Defendants without a showing that the claims sounded in "actual fraud." ECF No. 303. To protect the Class's interests, Plaintiffs' Counsel retained bankruptcy counsel.

On August 23, 2021, the Court entered an Order denying Defendants' motion for summary judgment, except as to one statement. *See* ECF No. 306. Among other things, the summary judgment order held that the claims sounded in "actual fraud," effectively defeating the newly added bankruptcy defenses and paving the way for claims against Individual Defendants to proceed. *Id.*

On September 22, 2021, this Court entered a Scheduling Order setting deadlines for motions in *limine* and the pre-trial order and setting this case on the ready-for-trial docket beginning February 7, 2022. *See* ECF No. 307. Pursuant to that schedule, on December 13 and 20, 2021, the Parties briefed 23 motions in *limine*. Defendants also moved to exclude the testimony of Plaintiffs' experts William Purcell and Harris Devor under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *See* ECF Nos. 370, 374. As the Action neared trial, Plaintiffs consulted with a well-known trial consultant regarding *voir dire* and themes for trial, prepared trial strategies, video deposition excerpts for use at trial, witness outlines, direct and cross examination outlines, witness and exhibit lists, and an opening statement. Lead Counsel also began preparing Plaintiffs and Plaintiffs' experts to testify at trial. On December 15, 2021, with discovery complete, Plaintiffs' claims having survived summary judgment, an imminent ready-for-trial setting, and while simultaneously and intensely preparing for trial, the Parties engaged in

a second full-day in-person mediation before Judge Phillips.[3] While the Parties did not reach a resolution at the mediation session, Judge Phillips subsequently issued a mediator's proposal. The proposal, which all Parties accepted on December 31, 2021, called for the settlement of all claims and a full release in exchange for a cash payment of $44,000,000.

## III.   ARGUMENT

### 1.   The Settlement Warrants Final Approval

Courts in the Second Circuit have noted that in securities class action litigation, "[s]ettlements are to be encouraged[.]" *In re Ramp Corp. Sec. Litig.*, No. 05-cv-6521, 2008 WL 58938, at *4 (S.D.N.Y. Jan. 3, 2008); *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 190 (S.D.N.Y. 2005) (citing *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129 (2d Cir.2001)) ("[I]t is axiomatic that the law encourages settlement of disputes…."). Under Rule 23(e), "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses." A court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). In determining whether to approve a settlement, "the Court should consider both the process by which the settlement was negotiated and the substantive fairness of the agreed-upon terms in light of the circumstances of the litigation." *In re NQ Mobile, Inc. Secs. Litig.*, No. 13-cv-7608, 2016 U.S. Dist. LEXIS 189606, at *6 (S.D.N.Y. Mar. 11, 2016); *see also Wal-Mart*, 396 F.3d at 116 (similar). "There is a 'strong judicial policy in favor of settlements, particularly in the class context' and 'compromise' is 'encouraged by the courts and favored by public policy.'" *Wal-Mart*, 396 F.3d at 116. Moreover, as noted by both the Supreme Court and the Second Circuit, in

---

[3] Judge Phillips was the same mediator the Parties had used for an unsuccessful early mediation in 2020. *See infra* at § I.

determining the fairness of a settlement, courts should "not decide the final merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) (similar). This is particularly important in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See* William Rubenstein, Alba Conte, & Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS § 13.44 (5th ed. 2014). The Settlement here is fair, adequate, and reasonable and not a product of collusion and should therefore be approved.

### 2. The Settlement Was Achieved By Arm's-Length Negotiation And Is Presumed Fair

"So long as the integrity of the arm's-length negotiation process is preserved…a strong initial presumption of fairness attaches to the proposed settlement, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ("A strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length"); MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995) (stating a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery"). Courts should give "proper deference to the private consensual decision of the parties" and bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2015 WL 10847814, at *4 (S.D.N.Y. Sept. 9, 2015).

The Settlement was reached through arm's-length negotiation, which included multiple

mediation sessions with a highly regarded mediator, the Hon. Layn R. Phillips (Ret.). While in-person mediation was unsuccessful, the Parties continued to pursue a resolution. Ultimately, Judge Phillips issued a mediator's proposal after the December 15, 2021 mediation which the Parties accepted on December 31, 2021. The hard fought, arm's-length negotiations and involvement of an experienced mediator demonstrate that the Settlement is fair and free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in…settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

In negotiating the Settlement, Plaintiffs had the benefit of attorneys who are highly experienced in complex litigation and familiar with the legal and factual issues of the case. *See* Exs. F and G to the Declaration of Kim E. Miller ("Miller Declaration"), submitted contemporaneously herewith; *see also Lyons v. Marrud, Inc.*, No. 66-0415, 1972 WL 327, at *2 (S.D.N.Y. June 6, 1972) ("Experienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary. The parties' decision regarding the respective merits of their positions has an important bearing on this case."). The efforts of Class Counsel secured a Settlement that provides substantial benefits to the Class, especially considering the expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.

The Parties and their counsel were eminently knowledgeable about the strengths and weaknesses of the Action prior to the Settlement. Plaintiffs and Class Counsel: (a) conducted a lengthy investigation by reviewing and analyzing publicly available information regarding Defendants, including SEC filings, online and newspaper articles, analyst reports, press releases, stock price movements, earnings conference call transcripts, and analysts presentations; (b)

drafted a detailed Amended Complaint; (c) consulted with a damages expert to evaluate recoverable losses; (d) consulted with an investigator; (e) successfully researched and drafted an opposition to Defendants' motion to dismiss; (f) consulted with an expert on loss causation and market efficiency; (g) exchanged initial disclosures; (h) issued multiple sets of requests for production of documents and interrogatories to Defendants, and reviewed responses thereto; (i) reviewed and analyzed over 9 million pages of documents; (j) participated in multiple discovery conferences before Judge Scheindlin; (k) prepared for and conducted 32 depositions; (l) successfully researched and drafted Plaintiffs' motion for class certification, participated in a full-day evidentiary hearing thereon, and successfully opposed Defendants' Rule 23(f) petition; (m) successfully researched and drafted an opposition to Defendants motion for summary judgment; (n) briefed 23 motions in *limine* and 2 motions to exclude the expert testimony of Plaintiffs' experts under *Daubert*; (o) prepared for trial including consulting a well-known trial consultant regarding *voir dire* and themes for trial, preparing trial strategies, witness outlines, and an opening statement; and (p) prepared Plaintiffs and Plaintiffs' experts to testify at trial. Thus, Class Counsel had "ample information" to evaluate the risks and merits of the Settlement relative to continued litigation.

That the Settlement is fair is also reflected by the fact that the proposed Plan of Allocation does not provide preferential treatment to Plaintiffs or any other Class Members. The proposed Plan of Allocation, which is set forth separately from the Notice and was developed by Plaintiffs' damages expert in consultation with Class Counsel, fairly and reasonably allocates the Net Settlement Fund among Class Members who submit valid Claim Forms, consistent with the liability asserted in the Complaint and the measure of damages usually applied to claims under Section 10(b) of the Exchange Act. The Net Settlement Fund will be allocated to Authorized

Claimants on a *pro rata* basis based on the relative size of their claims. *See* Miller Decl. at ¶ 64. Similar plans have repeatedly been approved by courts in this District. *See*, *e.g.*, *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

For these reasons, the Settlement, which resulted from a thorough arm's-length negotiations, enjoys a presumption of fairness. *See Thompson*, 216 F.R.D. at 61.

### 3. The *Grinnell* Factors Confirm that the Settlement is Substantively Fair

To evaluate the substantive fairness of a settlement, courts in the Second Circuit consider the nine *Grinnell* factors: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risk of litigation. *Grinnell Corp.*, 495 F.2d at 463, *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). "All nine factors need not be satisfied; the court must look at the totality of these factors in light of the specific circumstances involved." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-cv-8557, 2014 WL 7323417, at *5 (S.D.N.Y. Dec. 19, 2014); *see also Thompson*, 216 F.R.D. at 61 Here, the *Grinnell* factors overwhelmingly support final approval.

### a) The Complexity, Expense, Likely Duration of Litigation, the Risks of Establishing Liability and Damages and Maintaining the Class Action Through Trial, all Support Final Approval

The "risk, expense, complexity, and likely duration of further litigation" would be substantial. The Settlement provides the Class with substantial relief without the delay and risk

of trial and post-trial proceedings. Here, trial, appeal, and post-trial coverage and collection efforts would be risky, expensive, and, even if successful, would substantially delay recovery. Plaintiffs carried a heavy burden to convince a jury that Defendants made misrepresentations or omissions, that they were material, that Defendants acted with scienter, that there was artificial inflation of CB&I securities, and that declines in the prices of CB&I securities were attributable to disclosures of information revealing the fraud. Indeed, Plaintiffs recognize that a similar claim against the same Defendants prosecuted through trial by an opt-out plaintiff in Texas state court resulted in a complete defense verdict.

Even if Plaintiffs prevailed at trial, Defendants would likely appeal, further delaying any benefit to the Class. The delay and risk occasioned by trial, post-trial, and appellate processes offsets the potential of a higher award. *See, e.g.*, *Guevoura Fund Ltd. v. Sillerman*, No. 15-cv-07192, 2019 WL 6889901, at *10 (S.D.N.Y. Dec. 18, 2019). Even very large judgments recovered after lengthy litigation and trial can be completely lost on appeal or because of post-trial motion practice. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 748 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (collecting cases). This is especially true of securities class actions, where intervening shifts in legal standards have undermined trial victories. *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) (in a case brought in 2005, a Supreme Court decision after entry of a verdict in plaintiffs' favor reduced the billion-dollar award to approximately $78 million); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414, 433 (7th Cir. 2015) (reversing and remanding securities class action jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of intervening Supreme Court case); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231-32

14

(10th Cir. 1996) (1973 case tried to a verdict for plaintiffs in 1988 vacated in 1996 as a result of an intervening Supreme Court decision).

Additionally, in this case, the risk of securing and collecting a greater recovery than the Settlement was amplified by McDermott's bankruptcy and insurance coverage concerns. As a result of its reorganization, the only two viable sources of recovery were a rapidly eroding insurance stack, and the limited resources of Individual Defendants. Neither would be sufficient to satisfy a significantly larger award than the Settlement, and a jury verdict might include findings that would raise insurance coverage defenses. Thus, not only would *any* recovery be delayed by years, but the potential for a greater recovery via continued litigation was also minimal. These factors therefore all support final approval of the Settlement.

### b) The Class's Reaction Was Overwhelmingly Positive

The reaction of the Class to the Settlement is a significant factor for the court to weigh when considering its adequacy. *See, e.g.*, *City of Providence v. Aeropostale, Inc.*, No. 11-cv-7132, 2014 WL 1883494, at \*5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012). "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart*, 396 F.3d at 118 (citations omitted); *In re AOL Time Warner, Inc.*, No. 02-cv-5575, 2006 WL 903236, at \*10 (S.D.N.Y. Apr. 6, 2006) (finding that the "small number of objections and low percentage of opt-outs here strongly favor the Settlement").

The Class overwhelmingly favors the Settlement. Pursuant to the Court's Preliminary Approval Order, A.B. Data, Ltd. ("A.B."), the Claims Administrator, caused the Notice to be mailed to 247,376 potential Class Members and nominees thus far. *See* Miller Decl. at Ex. A, Supplemental Declaration of Eric Nordskog ("Suppl. Nordskog Decl."), at ¶ 4. Additionally, the

Summary Notice was published in *Business Wire* and *PR Newswire* on April 20, 2022. *See* ECF No. 432 at ¶ 10. To date, no objections have been received against 8,482 Proofs of Claim forms thus far submitted by potential Class Members. *See* Miller Decl. Ex. A at ¶¶ 8-9. The Class's favorable reaction supports approving the Settlement. *See Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22-23 (2d Cir. 1987) (finding no abuse of discretion where district court approved settlement with 36% of the class objecting); *Vaccaro v. New Source Energy Partners L.P.*, No. 15-cv-8954, 2017 WL 6398636, at *4 (S.D.N.Y. Dec. 14, 2017) ("The small number of objectors weighs in favor of final approval."); *Menkes v. Stolt-Nielsen S.A.*, No. 03-cv-0409, 2011 WL 13234815, at *3 (D. Conn. Jan. 25, 2011) ("[T]he complete absence of opposition or exclusion requests favors approval of the proposed settlement.").

### c) The Stage of Proceedings and Maturity of Underlying Substantive Issues Supports Final Approval

The advanced stage of the proceedings supports approval of the Settlement. "This factor relates to whether the plaintiffs had sufficient information on the merits of the case to enter into a settlement." *Parker v. Time Warner Entm't Co.*, 631 F. Supp. 2d 242, 259 (E.D.N.Y. 2009), *aff'd sub nom. Lobur v. Parker*, 378 F. App'x 63 (2d Cir. 2010). Extensive discovery ensures the parties had access to sufficient material to evaluate their cases and to assess the settlement given the strengths and weaknesses. *Id*. Here, the proceedings were sufficiently advanced to provide Plaintiffs with a thorough understanding of the strengths and weaknesses of the Class's claims. By the time the Parties agreed to settle, they had completed fact and expert discovery and had litigated this Action until the eve of trial. *See supra* at § III.2. As a result of these activities, and having completed both fact and expert discovery, counsel "had a strong grasp of the strengths and weaknesses of the case when negotiating and evaluating the proposed Settlement...." *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, No. 08-cv-5310, 2019 WL

13150344, at *2 (S.D.N.Y. Mar. 8, 2019), *aff'd as modified sub nom. New Jersey Carpenters Health Fund v. NovaStar Mortg., Inc.*, 28 F.4th 357 (2d Cir. 2022); *see also Parker*, 631 F. Supp. 2d at 259 (that the parties conducted sufficient discovery and motion practice to "have become apprised of the strengths and weaknesses of their cases" supported final approval).

### d)   The Risks of Establishing Liability and Damages Support Final Approval

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell Corp.*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004). In other words, "[i]n assessing the Settlement the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Castagna v. Madison Square Garden, L.P.*, No. 09-cv-10211, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (citation omitted). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *In re Glob. Crossing*, 225 F.R.D. at 459.

There are substantial risks to prosecuting this Action through trial. While Plaintiffs are confident that they would prevail at trial, Plaintiffs acknowledge that continued litigation would expose the Class to a risk of no recovery or a much lower recovery. As demonstrated by Defendants' motion for summary judgment, Defendants have their own evidence to present to the jury, disputing, among other things, whether any of the alleged misstatements were false or misleading. *See* ECF Nos. 252-259. "Because Plaintiffs' ability to establish the liability of

Defendants is 'far from certain,' this factor weighs in favor of settlement approval." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016). Further, Plaintiffs face a "substantial risk involved in proving *scienter,* because it goes directly to a defendant's state of mind, and proof of state of mind is inherently difficult." *Athale v. Sinotech Energy Ltd.*, No. 11-cv-05831, 2013 WL 11310686, at *5 (S.D.N.Y. Sept. 4, 2013); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) (same).

Plaintiffs would also have to show that the alleged securities violations caused Plaintiffs' losses. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005). Establishing loss causation is a "complicated and uncertain process, typically involving conflicting expert opinion[s]." *In re Glob. Crossing*, 225 F.R.D. at 459. Plaintiffs are confident they would successfully establish loss causation, but Defendants' expert has opined that the alleged misrepresentations and corrective disclosures fail to link to the price declines of CB&I stock – something Defendants would undoubtedly argue at trial. *See* ECF No. 328-2; *see also Vaccaro*, 2017 WL 6398636, at *5 (noting that "Plaintiffs may have been unable to prove that Defendants' misleading statements were the cause of Plaintiffs' losses"); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 118 (S.D.N.Y. 2009) (noting risk that dispute between experts over loss causation might "limit[] the amount of recovery plaintiffs would receive").

Moreover, both loss causation and damages disputes would involve at trial a "battle of the experts," and a "jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses." *In re Bear Stearns*, 909 F. Supp. 2d at 268; *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *18 (S.D.N.Y. Nov. 8, 2010) ("The jury's verdict…would…depend on its reaction to the complex testimony of

experts, a reaction that is inherently uncertain and unpredictable."); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002) (noting that a "jury could be swayed by experts for the Defendants, who would minimize the amount of Plaintiffs' losses"). Moreover, even if Plaintiffs obtained a verdict, the post-verdict claims process could further reduce the overall amount of damages recovered. Accordingly, the certain and immediate relief Settlement affords in light of the risks of establishing liability, loss causation, and damages supports approval of the Settlement.

> **e)** **The Risks of Maintaining Class Certification Support Final Approval**

The risks of maintaining class certification through trial also supports approval of the Settlement. While the Court has certified the Class here, that does not obviate the risk of decertification at a later date. An "order that grants or denies class certification may be altered or amended before the final judgment" under Rule 23(c)(1)(C). *See also Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07-cv-2207, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) ("Because there is a real risk that class certification…if granted, it may later be rejected on appeal or decertified, the Court concludes that this factor also weighs in favor of approving the proposed settlement."); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification. This factor indicates that settlement is advantageous to the class at this time."). Here, there is a significant possibility that the Court could shorten the Class Period at trial in light of Judge Scheindlin's finding that price impact was not shown for any date after January 29, 2015. *See* ECF No. 217. Accordingly, the risks and uncertainties of maintaining the class action status supports approval of the Settlement.

> **f)** **Defendants' Ability to Withstand a Greater Judgment**

CB&I's successor is bankrupt and its exposure is limited to a rapidly eroding insurance stack. While a defendant is not required to "empty its coffers before a settlement can be found

adequate," *see In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011), Plaintiffs do not believe Defendants have the ability to withstand a judgment much greater than the Settlement if this case proceeded to trial and appeal.[4] The Settlement represents a good compromise between the Parties that delivers immediately a fund for the benefit of Class Members that is near what Plaintiffs perceive as Defendants' maximum ability to pay. Thus, this factor strongly favors final approval.

### g)      Range of Reasonableness of Settlement Fund

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell Corp.*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Id*. at 462. A court's "determination of whether a settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equitation yielding a particularized sum." *In re Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119. In fact, the Second Circuit has stated that "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2.

The Settlement provides for a recovery of $44,000,000. After consulting with an

---

[4] Courts in the Second Circuit have "explicitly acknowledged that the defendants' ability to withstand a higher judgment…standing alone, does not suggest that the settlement is unfair." *D'Amato*, 236 F.3d at 86; *Pantelyat v. Bank of Am., N.A.*, No. 16-cv-8964, 2019 WL 402854, at *7 (S.D.N.Y. Jan. 31, 2019) (similar). The Court must weigh this factor "in conjunction with all of the *Grinnell* factors, most notably the risk of the class prevailing and the reasonableness of the settlement fund." *In re AOL*, 2006 WL 903236, at *1.

econometric expert, Plaintiffs and their counsel believe that a successful verdict on all claims could result in aggregated damages to the Class as high as $701 million. The Settlement thus represents approximately 6.28% of the potentially most likely recovery. Moreover, the damages computation assumes that 100% of eligible Class Members file claims. It is more likely that less than 100% will do so (despite efforts made to notify as many eligible claimants as possible, including posting the Notice on the internet).

The 6.28% recovery here falls well within the range of reasonableness and is at the higher end of historical averages. *See*, *e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483 n.130 (S.D.N.Y. 2009) (citing a law review article finding that "the ratio of securities class action settlements to investors' economic losses has ranged over recent years between two and three percent"); *In re China Sunergy Sec. Litig.*, No. 07-cv-7895, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("[T]he average settlement amounts in securities fraud class actions where investors sustained losses over the past decade…have ranged from 3% to 7% of the class members' estimated losses….") (internal quotation marks omitted); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, No. 02 MDL 1484, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (a recovery of approximately 6.25% was "at the higher end of the range of reasonableness of recovery in class action[] securities litigations"). Indeed, the 6.28% recovery exceeds the median recovery of 3.3% for securities class actions with damages of $500-999 million between 2011-2019 and the median recovery of 2.6% of damages in 2020. *See* Cornerstone Research, *Securities Class Action Settlements: 2020 Review and Analysis* at 6, (2021), *available at* https://www.cornerstone.com/wp-content/uploads/2021/12/Securities-Class-Action-Settlements-2020-Review-and-Analysis.pdf.

### 4.    The Settlement Meets All the Requirements of Rule 23(e)

Rule 23(e) lists four factors for a court to consider in determining fairness:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's-length; (C) the relief provided for the class was adequate, taking into account: (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23 (e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

Sections A, B, and C (i-ii) are addressed herein. *See infra* at § III.2-3. The proposed fee award (Section (C)(iii)) is discussed in the accompanying Motion for Attorneys' Fees, which demonstrates that Class Counsel's request for 33 $^{1/3}$% of the Settlement Fund is fair, reasonable, and provides for a schedule for payment that ensures counsel maintains 'skin in the game' by partially delaying payment until after distribution of the Net Settlement Fund to Authorized Claimants. With respect to identifying agreements pursuant to Rule 23(e)(3)(C)(iv), the Stipulation previously filed with the Court, ECF No. 423, identifies that the Parties have entered into a Supplemental Agreement, as is the standard practice in securities fraud class action settlements. *See* Stipulation at ¶ 7.6. The Supplemental Agreement provides Defendants with the option to terminate the Settlement if Class Members possessing a certain aggregate number of shares who meet certain criteria exclude themselves from the Class. *Id*. To protect the Class, the specific terms of Supplemental Agreement are confidential. *See In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-cv-6716, 2022 WL 198491, at *13 (E.D.N.Y. Jan. 21, 2022) (finding that the supplemental agreement does not pose an impediment to final approval and noting how the terms of the supplemental agreement are kept confidential "to avoid creating incentives for a small group of investors to opt out solely to leverage the threshold to exact an individual settlement"); *Christine Asia Co. v. Yun Ma*, No. 15-MD-2631, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) ("This type of agreement is standard in securities class action settlements and has no

negative impact on the fairness of the Settlement."). Finally, as discussed in § IV below, the proposed Plan of Allocation treats all Class Members equitably.

In sum, the Settlement is fair, reasonable, and adequate under Rule 23(e) and the *Grinnell* factors, supporting Plaintiffs' request for final approval of the Settlement.

## IV.     THE PLAN OF ALLOCATION SHOULD BE APPROVED

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized -- namely, it must be fair and adequate. When formulated by competent and experienced counsel, a plan of allocation need have only a reasonable, rational basis. Such a reasonable plan may consider the relative strength and values of different categories of claims." *In re IMAX Sec. Litig.*, 283 F.R.D. at 192 (citations, brackets, and internal quotation marks omitted). *Pro rata* distributions have "frequently been determined to be fair, adequate, and reasonable." *Fleisher*, 2015 WL 10847814, at *12 (collecting cases).

The proposed Plan of Allocation, which was developed by Class Counsel in consultation with a economics expert, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. *See* Miller Decl. at ¶¶ 58-66. A Recognized Loss amount will be calculated for each purchase or acquisition of CB&I common stock during the Class Period listed on the Claim Form and for which adequate documentation is provided. The calculation of Recognized Loss amounts is based on the difference between the amount of estimated alleged artificial inflation in CB&I common stock on the purchase date and the amount of estimated alleged artificial inflation on the sale date. *Id*. at ¶ 61. The sum of the Recognized Loss amounts for all of a Claimant's transactions in CB&I common stock is the Claimant's recognized claim ("Recognized Claim"), and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id*. at ¶ 64.

Class Counsel submits that the proposed Plan of Allocation fairly and rationally allocates the proceeds of the Net Settlement Fund among Class Members based on the losses they suffered on transactions in CB&I common stock attributable to the conduct alleged. Moreover, the Plan of Allocation is set forth in conjunction with the Notice, and, to date, no objections to the Plan have been received from any Class Members. *Id*. at ¶ 66. Accordingly, the proposed Plan of Allocation is fair and reasonable and should be granted final approval to administer the Settlement.

## V.  NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS

The notice plan set forth in the Court's preliminary approval order "direct[ed] notice in a reasonable manner to all class members who would be bound by the proposal," satisfying Fed. R. Civ. P. 23(e)(1), the requirements of the PSLRA, and constitutional due process. It provided "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974) (citing FED. R. CIV. P. 23(c)(2))

The Court-approved notice includes all the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the Parties' reasons for proposing the Settlement; (vi) the attorneys' fees and costs sought; (vii) how to opt-out of the Class; (viii) how to object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; and (ix) the binding effect of a judgment on Class Members. It also apprised Class Members about the final approval hearing, as did the Court's entry on PACER and the Settlement website.

A.B is a nationally recognized third-party claims administrator, carried out the notice program under Class Counsel's supervision. The Court approved the notice documents and

notice plan in its Preliminary Approval Order. As the Court ordered, the Summary Notice was published on April 20, 2022, and the Postcard Notice was mailed or a link to Notice and Proof of Claim was emailed to over 50,000 potential Class Members. *See* ECF No. 432 (Initial Nordskog Decl.) at ¶¶ 6, 10. In total, as of June 24, 2022, the Postcard Notice was mailed or a link to Notice and Proof of Claim was emailed to 247,376 potential Class Members. *See* Miller Decl. at Ex. A., Suppl. Nordskog Decl. at ¶ 4. Summary Notice was also published, twice, directing potential Class Members to a settlement website at www.chicagobridgeironsecuritieslitigation. com, which contains the Notice, Proof of Claim, Stipulation of Settlement, and other documents. Additionally, A.B. has maintained a toll-free telephone number to answer any questions from Class Members. *Id.* at ¶ 5. To date, no Class Members have objected to the Settlement, and only two putative Class Members have requested exclusion from the Class. *Id.* at ¶¶ 7-8.[5]

This combination of individual first-class mail and/or email notice to all Class Members who could be identified with reasonable effort, supplemented by publication notice in a relevant widely circulated publication, via newswires, and posted on the internet, was "the best notice practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 (S.D.N.Y. 2014).

## VI.    CONCLUSION

For all of the foregoing reasons, the Court should finally approve the Settlement, finally approve the Plan of Allocation, and enter the proposed Final Judgment and Order of Dismissal with Prejudice.

---

[5] To date, no potential Class Members or their counsel have contacted Class Counsel or the Claims Administrator to indicate they will attend the hearing, as required by the Notice. In an abundance of caution, Class Counsel will have an attorney with a cell phone stationed outside the courtroom at the time of the hearing to link any person who appears in person to the telephonic hearing.

DATED: June 27, 2022

Respectfully submitted,

**KAHN SWICK & FOTI, LLC**

/s/ *Kim E. Miller*
Kim E. Miller (KM-6996)
J. Ryan Lopatka (*admitted PHV*)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3730
Fax: (504) 455-1498
Email: kim.miller@ksfcounsel.com
Email: j.lopatka@ksfcounsel.com

-and-

Lewis S. Kahn
Craig J. Geraci, Jr. (*admitted PHV*)
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Fax: (504) 455-1498
Email: lewis.kahn@ksfcounsel.com
Email: craig.geraci@ksfcounsel.com

*Lead Counsel for Lead Plaintiff ALSAR Ltd.*
*Partnership and Class Counsel*

**POMERANTZ LLP**
Joshua B. Silverman (*admitted PHV*)
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Email: jbsilverman@pomlaw.com

-and-

Jeremy A. Lieberman
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
Email: jalieberman@pomlaw.com

*Counsel for Additional Plaintiffs and Class Representatives Iron Workers Local 40, 361, & 417 – Union Security Funds and Iron Workers Local 580 – Joint Funds and the Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I caused the foregoing Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement on Defendants on June 27, 2022 via CM/ECF.

/s/ *Kim E. Miller*
Kim E. Miller