**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE CHICAGO BRIDGE & IRON COMPANY N.V. SECURITIES LITIGATION | ) )  **CASE NO. 1:17-CV-1580** ) ) Hon. Lorna Schofield ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND
COMPENSATORY AWARDS FOR PLAINTIFFS**

**KAHN SWICK & FOTI, LLC**
Kim E. Miller (KM-6996)
J. Ryan Lopatka (*admitted PHV*)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (504) 455-1400
Fax: (504) 455-1498

Lewis S. Kahn
Craig J. Geraci, Jr. (*admitted PHV*)
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Fax: (504) 455-1498

*Lead Counsel for Lead Plaintiff
ALSAR Ltd. Partnership and
Class Counsel*

**POMERANTZ LLP**
Joshua B. Silverman (*admitted PHV*)
10 South La Salle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Fax: (312) 229-8811

*Counsel for Additional Plaintiffs Iron
Workers Local 40, 361, & 417 –
Union Security Funds and Iron
Workers Local 580 – Joint Funds*

## TABLE OF CONTENTS

Page:

I.    INTRODUCTION .................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 5

  A.  Plaintiffs' Counsel are Entitled to an Award of Attorneys' Fees and Expenses
      from the Common Fund .................................................................................... 5

  B.  The Court Should Award a Reasonable Percentage of the Common Fund ...................... 6

  C.  Analysis of the Relevant Factors Confirms that the Requested Fee Is Reasonable........... 8

      1.  Time and Labor Expended by Plaintiffs' Counsel ........................................... 8

      2.  The Magnitude, Complexity, and Risk of Litigation .................................... 9

      3.  The Settling Parties Were Represented by Experienced, High-Caliber Counsel ....... 14

      4.  The Requested Fee in Relation to the Settlement is Fair, Reasonable, and
          Wholly Consistent with Case Law .............................................................. 16

      5.  Public Policy Considerations: Private Securities Suits Are an
          "Essential Supplement" to Criminal Prosecution and Civil Enforcement ................. 17

      6.  A Lodestar Cross-Check Confirms That the Requested Attorneys' Fees
          are Reasonable ............................................................................... 18

  D.  Plaintiffs' Counsel Should Be Reimbursed for $3,462,683.78 in
      Litigation Expenses ........................................................................................ 20

  E.  The Proposed Compensatory Awards to Plaintiffs are Reasonable................................ 22

III.  TIMING OF PAYMENTS ........................................................................................ 24

IV.   CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s):**

## Cases

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
   No. 14-cv-7126, 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018)........................................ 16, 23

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)..................................................................................... 17

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ......................................................................... 11

*Aponte v. Comprehensive Health Mgmt., Inc.*,
   No. 10-cv-4825, 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) .................................. 9

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990)............................................................................. 11

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)..................................................................................... 18

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985).................................................................................. 6, 17

*Becher v. Long Island Lighting Co.*,
   64 F. Supp. 2d 174 (E.D.N.Y. 1999) ............................................................... 17

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979)........................................................................... 11

*Blum v. Stenson*,
   465 U.S. 886 (1984)...................................................................................... 6

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)....................................................................................... 5

*Bryant v. Avado Brands, Inc.*,
   100 F. Supp. 2d 1368 (M.D. Ga. 2000), *rev'd on other grounds sub nom.*
   *Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001) ................................................ 12

*Calfo, et al. v. Messina, Sr. et al.*,
   No. 15-cv-4010, ECF No. 184 (S.D.N.Y. Oct. 30, 2017)........................................ 25

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*,
   No. 17-cv-10014, 2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020) ............................... 7

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)........................................................................... 14

*City of Providence v. Aéropostale, Inc.*,
   No. 11-cv-7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..................... 2, 5, 10, 15, 17, 19

*Collins v. Olin Corp.*,
   No. 03-cv-0945, 2010 WL 1677764 (D. Conn. Apr. 21, 2010).............................. 17

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ................................................................ 20

*Eltman v. Grandma Lee's, Inc.*,
No. 82-cv-1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986) ................................ 14

*Fishoff v. Coty Inc.*,
No. 09-cv-0628, 2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*,
634 F.3d 647 (2d Cir. 2011) ................................................................................ 13

*Fleisher v. Phoenix Life Ins. Co.*,
No. 11-cv-8405, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ........................... 19

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015), *reh'g denied* (July 1, 2015) ................................ 13

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ................................................................ 5, 6, 7, 9, 14

*Hayes v. Harmony Gold Mining Co.*,
509 F. App'x 21 (2d Cir. 2013), *cert. denied*, 571 U.S. 888, 134 S. Ct. 310 (2013) ................ 7

*Hicks v. Stanley*,
No. 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................... 18

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ...................................................................... 11, 14

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
No. 03-cv-5755, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006, *aff'd*,
272 F. App'x 9 (2d Cir. 2008). ........................................................................... 15

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................. 8, 10

*In re AOL Time Warner, Inc.*,
No. 02-cv-5575, 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) ........................... 19

*In re AOL Time Warner, Inc.*,
No. 02-cv-5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................... 11

*In re Apple Computer Sec. Litig.*,
No. 84-cv-20148, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ........................... 11

*In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*,
No. 09 MDL 2058, 2013 WL 12091355 (S.D.N.Y. Apr. 8, 2013), *aff'd*,
772 F.3d 125 (2d Cir. 2014); .............................................................................. 23

*In re BankAtlantic Bancorp, Inc.*,
No. 07-cv-61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........................... 14

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................... 13, 21, 22

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014) .................................................................... 7

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-cv-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010)................................ 16

*In re Delcath Systems, Inc. Sec. Litig.*,
  No. 13-cv-3116, ECF No. 141 (S.D.N.Y. Oct. 22, 2015)........................................ 25

*In re Deutsche Telekom AG Sec. Litig.*,
  No. 00-cv-9475, 2005 WL 7984326 (S.D.N.Y. June 9, 2005) ................................ 20

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05-cv-10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)............................... 20

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015), *aff'd*,
  674 F. App'x 37 (2d Cir. 2016) ............................................................................... 17

*In re Facebook, Inc. Sec. Litig*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018)...................................................................... 21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................ 15

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................ 8, 17, 23

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................ 22

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009)................................................................. 2, 16

*In re Interpublic Sec. Litig.*,
  No. 02-cv-6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)................................. 6

*In re Med. X-Ray Film Antitrust Litig.*,
  No. 93-cv-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ................................. 17

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................. 15, 20, 22, 23

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
  985 F. Supp. 410, (S.D.N.Y. 1997)......................................................................... 10

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)...................................................................... 20

*In re Top Tankers, Inc. Sec. Litig.*,
  No. 06-cv-13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008).......................... 6, 23

*In re Twinlab Corp. Sec. Litig.*,
  187 F. Supp. 2d 80 (E.D.N.Y. 2002) ....................................................................... 19

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989)........................................................................... 18

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ........................... 7

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985)........................................................... 14, 15, 18

*In re Worldcom, Inc. Sec. Litig.*,
  388 Supp. 2d 319 (S.D.N.Y. 2005)................................................................ 18, 20

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005)................................................................ 11

*J. I. Case Co. v. Borak*,
  377 U.S. 426 (1964)........................................................................................ 6

*Kalnit v. Eichler*,
  99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001) ....................... 13

*Khait v. Whirlpool Corp.*,
  No. 06-cv-6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)................................. 17

*Kurzweil v. Philip Morris Companies, Inc.*,
  No. 94-cv2373, 1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999)................................. 20

*Landmen Partners Inc. v. The Blackstone Grp. L.P.*,
  No. 08-cv-03601, ECF No. 183 (S.D.N.Y. filed Apr. 15, 2008)............................... 16

*LeBlanc-Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998)............................................................................ 19

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................... 5, 18

*Matter of Cont'l Illinois Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) .......................................................................... 10

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)................................................................................... 18, 19

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
  No. 06-cv-4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009)............................... 17

*Stein v. Eagle Bancorp*,
  No. 19-cv-6873, ECF No. 104 (S.D.N.Y. Feb. 10, 2022) .................................... 25

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.*,
  318 F.R.D. 19 (S.D.N.Y. 2016) ..................................................................... 23

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*,
  818 F.2d 278, 283 (2d Cir. 1987)................................................................... 20

*Robbins v. Koger Properties, Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .................................................................. 11, 13

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185 (S.D.N.Y. 1997)................................................................. 20

*Savoie v. Merchants Bank*,
  166 F.3d 456 (2d Cir. 1999)....................................................................... 7, 19

*Sheikh v. Align Communications, Inc.*,
    No. 15-cv-07549, 2018 WL 11214836 (S.D.N.Y. Apr. 11, 2018) ............................................. 7

*Silverberg v. People's Bank*,
    23 F. App'x 46 (2d Cir. 2001) ................................................................................................. 17

*Silverstein v. AllianceBernstein, L.P.*,
    No. 09-cv-5904, 2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013) ............................................. 16

*Stefaniak v. HSBC Bank USA, N.A.*,
    No. 05-cv-0720, 2008 WL 7630102 (W.D.N.Y. June 28, 2008) ............................................. 17

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
    No. 01-cv-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ............................................ 10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ................................................................................................................. 17


**Statutes**

15 U.S.C. § 78u-4 ...................................................................................................................... 7, 22


**Other Authorities**

7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,
    FEDERAL PRACTICE AND PROCEDURE § 1803 (3d ed. 2005) ..................................................... 5

Cornerstone Research, "Securities Class Action Filings, 2021 Year in Review" ...................... 14

Herbert M. Kritzer, *Seven Dogged Myths Concerning Contingency Fees*,
    80 Wash. U. L.Q. 739 (2002) ................................................................................................. 23

James S. Kakalik et al.,
    "An Evaluation of Judicial Case Management Under the Civil Justice Reform Act,"
    (1996) ....................................................................................................................................... 23

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 (2004) ................................................... 5

NERA Economic Consulting, Janeen McIntosh and Svetlana Starykh,
    "Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review,"
    January 25, 2022 .......................................................................................................... 10, 14, 17

Lead Plaintiff ALSAR Ltd. Partnership ("ALSAR") and additional Plaintiffs Iron Workers Local 40, 362, & 417 – Union Security Funds and Iron Workers Local 580 – Joint Funds ("Iron Workers" and collectively with ALSAR, "Class Representatives" or "Plaintiffs") and Lead Counsel Kahn, Swick & Foti LLC ("KSF") and Additional Counsel Pomerantz LLP ("Pomerantz," and together with Lead Counsel, "Plaintiffs' Counsel")[1] respectfully submit this memorandum in support of their motion for: (i) an award of attorneys' fees of one-third (33 $^{1/3}$%) of the Settlement Fund, plus accrued interest; (ii) reimbursement of necessary and reasonable litigation expenses of $3,462,683.78, plus accrued interest; and (iii) compensatory awards of $60,000 to ALSAR, $25,000 to Iron Workers Local 40, 362, & 417 – Union Security Funds, and $20,000 to Iron Workers Local 580 – Joint Funds.

## I.    INTRODUCTION

Plaintiffs have obtained a cash Settlement of $44,000,000 for the benefit of the Class to resolve this securities class action against Defendants Chicago Bridge & Iron Company N.V., ("CB&I" or the "Company"), Philip Asherman, Ronald Ballschmiede, and Westley Stockton (collectively, "Defendants") after more than five years of litigation. Plaintiffs' Counsel, who have received no payment to date, now seek attorneys' fees of one-third of the Settlement Fund, or $14,666,667. Plaintiffs' Counsel have spent over 45,108 hours in prosecution of this case against Defendants, with a lodestar of $26,282,263.10. *See* Declaration of Kim E. Miller ("Miller Declaration") filed contemporaneously herewith, at ¶¶ 74-75, and Exhibit B. The requested fee award of $14,666,667 represents a *negative* lodestar multiplier of just **0.55** on Plaintiffs' Counsel's relentless efforts to prosecute the litigation since March of 2017. The fee sought is

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Stipulation and Agreement of Settlement, fully executed on February 4, 2022 (the "Stipulation"). ECF No. 423.

well within the range regularly approved by courts in this Circuit. *See*, *e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33% of the settlement fund of $510,254,849.99); *City of Providence v. Aéropostale, Inc.*, No. 11-cv-7132, 2014 WL 1883494, at *10-11 (S.D.N.Y. May 9, 2014) (awarding 33% of the settlement fund of $15 million) (collecting cases). Plaintiffs have determined this request to be reasonable and consistent with their retainer agreements. *See* Declarations of Dr. Robert Fishel, M.D., Brian Sabbagh, and Sean Boyle, attached to the Miller Declaration as Exs. C, D, and E, respectively.

The time and labor Plaintiffs' Counsel expended litigating this Action for more than five years included: (a) conducting a lengthy investigation by reviewing and analyzing publicly available information regarding Defendants, including SEC filings, online and newspaper articles, analyst reports, press releases, stock price movements, and earnings conference call transcripts, and interviewing former employees of CB&I; (b) successfully opposing Defendants' motion to transfer this Action to the Southern District of Texas; (c) drafting a detailed and viable Amended Complaint; (d) consulting with a damages expert to evaluate recoverable losses; (e) researching and successfully opposing Defendants' motion to dismiss; (f) consulting with experts on market efficiency, materiality, loss causation/damages, and accounting issues; (g) exchanging initial disclosures; (h) issuing multiple sets of requests for production of documents, interrogatories, and requests to admit to Defendants, as well as subpoenas to third parties, and reviewing responses thereto; (i) reviewing and analyzing over 9 million pages of documents; (j) participating in multiple discovery conferences before the Court-appointed Special Master, the Hon. Shira Scheindlin (Ret.); (k) preparing for and conducting 32 depositions; (l) researching and drafting a successful motion for class certification; (m) preparing for and participating in an 11-hour evidentiary hearing before Judge Scheindlin on class certification; (n) successfully

moving the Court to adopt the relief set forth in Judge Scheindlin's Report & Recommendation on class certification; (o) successfully opposing Defendants' Rule 23(f) petition for interlocutory appeal of class certification; (p) researching and successfully opposing Defendants' motion for summary judgment; (q) drafting 7 motions *in limine*; (r) responding to Defendants' 16 motions *in limine* and 2 *Daubert* motions; (s) preparing witnesses for trial; (t) preparing exhibits, jury instructions, a verdict form and a proposed pre-trial order; (u) preparing outlines for direct examination and cross-examination of witnesses; (v) consulting with a well-known trial consultant regarding *voir dire* and themes for trial; (w) preparing trial strategies, video deposition excerpts for use at trial, and an opening statement; (x) preparing Plaintiffs and Plaintiffs' experts to testify at trial; (y) drafting mediation statements and participating in 2 full-day mediations before the Hon. Layn Phillips (Ret.); (z) further negotiating with Defendants until the $44,000,000 Settlement was achieved; (aa) negotiating with Defendants to document the Settlement; (bb) working with damages consultants to prepare the Plan of Allocation; and (cc) overseeing Notice of the Settlement to Class Members.

A.B. Data, Ltd. ("A.B."), the Court-appointed Claims Administrator, provided individual notice of the Settlement via e-mail, or where e-mail could not be identified or where an e-mail was returned as undeliverable, via first-class mail to each member of the Class whose address was reasonably ascertainable, and caused publication of the Summary Notice in *Business Wire* and *PR Newswire* on April 20, 2022, 2022. *See* ECF No. 432 at ¶¶ 6, 10; *see also* Miller Decl. at Ex. A, Supplemental Declaration of Eric Nordskog ("Suppl. Nordskog Decl."). The Notice amply described the terms of the Settlement, including: (a) the nature, history, and progress of the litigation; (b) the proposed Settlement; (c) the final approval hearing; (d) the process to opt out of, or object to, the Settlement; (e) the plan for allocating the Net Settlement Fund among

Class Members; (f) the maximum amount of fees and expenses to be sought by counsel and the maximum amount of compensatory awards to be sought for Plaintiffs; and (g) the necessary information for any Class Member to find more information or examine the Court records should he or she desire to do so. The deadline for objections and requests for exclusion is July 1, 2022. Thus far, no objections have been received. *See* Miller Decl. at ¶ 55. Only two putative Class Members have requested exclusion from the Class in connection with the Settlement.[2] *See id.* Further, neither request for exclusion properly states the date(s), price(s), or number of shares purchased and/or sold during the Class Period, nor do they criticize the Settlement in any respect.

In addition, Plaintiffs' Counsel respectfully request reimbursement of $3,462,683.78 for expenses that they reasonably and necessarily incurred in prosecuting this litigation.[3] *See* Miller Decl. at ¶¶ 86-93. This amount represents less than 8% of the Settlement. Moreover, these expenses were both eminently reasonable and necessary to successfully prosecute this Action over five years and to resolve the claims against Defendants in a beneficial manner for the Class.

Plaintiffs in this Action deserve the request for an award of $105,000 total ($60,000 to ALSAR, $25,000 to Iron Workers Local 40, 362, & 417 – Union Security Funds, and $20,000 to Iron Workers Local 580 – Joint Funds) to compensate them for their time and service to the Class. They devoted substantial time and effort researching the facts of the case, each reviewed filings, hearing, and deposition transcripts, produced documents, sat for depositions, conferred

---

[2] Certain individuals and institutions prosecuting direct actions against Defendants opted out of this Action prior to the Settlement, and their exclusion does not reflect any dissatisfaction with either the Settlement itself or with its terms. *See* ECF Nos. 273, 278.

[3] The accompanying Miller Declaration and the fee declarations attached thereto are integral to this submission. The Court is respectfully referred to them for a detailed description of the factual and procedural history of the Action, the claims asserted, Plaintiffs' and their Counsel's investigation and litigation efforts, the negotiations leading to the Settlement, and the fairness and reasonableness of the Settlement, the Plan of Allocation, and Class Counsel's request for an award of attorneys' fees and expenses and compensatory awards for each Plaintiff.

with Plaintiffs' Counsel about litigation and settlement strategies, prepared to testify at trial, and provided authorization to Plaintiffs' Counsel for the range to be sought in the settlement negotiations.

## II.   ARGUMENT

### A.   Plaintiffs' Counsel are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court and Second Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This ensures that "competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (Fourth) § 14.121 (2004). "The court's authority to reimburse the representative parties…stems from the fact that the class-action device is a creature of equity and the allowance of attorney related costs is considered part of the historic equity power of the federal courts." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1803, at 325 (3d ed. 2005). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *City of Providence*, 2014 WL 1883494, at *10-11. Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See, e.g.*, *City of Providence*, 2014 WL 1883494, at *10-11; *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).

The Supreme Court has repeatedly underscored the importance of this purpose, noting

that private securities actions, such as this one, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)). Courts in this Circuit have consistently adhered to these teachings. *See In re Top Tankers, Inc. Sec. Litig.*, No. 06-cv-13761, 2008 WL 2944620, at *12 (S.D.N.Y. July 31, 2008) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to "a reasonable fee – set by the court – to be taken from the fund.") (internal quotation omitted). Moreover, the "[d]etermination of 'reasonableness' is within the discretion of the district court." *In re Interpublic Sec. Litig.*, No. 02-cv-6527, 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004). Here, the requested attorneys' fees of one-third (33 $^{1/3}$%) of the Settlement Fund ($14,666,667) is eminently reasonable in light of the work provided and the result achieved.

**B.     The Court Should Award a Reasonable Percentage of the Common Fund**

The Supreme Court has held that where counsel has created a common fund, an attorneys' fee is properly determined on a percentage-of-recovery basis. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,'…a reasonable fee is based on a percentage of the fund bestowed on the class…."). The Second Circuit has echoed this call and authorized district courts to employ the percentage-of-the-fund method when awarding fees in common fund cases. *See, e.g.*, *Goldberger*, 209 F.3d at 47 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) (affirming district court's conclusion that the percentage method "aligns the

interests of class counsel with those of the class"), *cert. denied*, 571 U.S. 888, 134 S. Ct. 310 (2013). In expressly approving the percentage method, the Second Circuit recognized that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49; *see also Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"). Moreover, this Court has used the percentage method to calculate attorneys' fees in common fund cases. *See City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, No. 17-cv-10014, 2020 WL 7413926, at *4 (S.D.N.Y. Dec. 17, 2020) (Schofield, J.); *Sheikh v. Align Communications, Inc.*, No. 15-cv-07549, 2018 WL 11214836, at *1 (S.D.N.Y. Apr. 11, 2018) (Schofield, J.); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (Schofield, J.).

The Private Securities Litigation Reform Act of 1995 ("PSLRA") also supports using the percentage-of-recovery method: "Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6). Some courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage method in assessing fees for securities class actions. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695, 2007 WL 4115808, at *3 (S.D.N.Y. Nov. 7, 2007).

Given the language of the PSLRA, the Supreme Court's strong support for the percentage method, the Second Circuit's explicit approval of the percentage method in *Goldberger*, and the established practice among the district courts in this Circuit, Plaintiffs submit that fees should be awarded based on the percentage approach. That approach aligns the interests of counsel and the class, *see Colgate-Palmolive*, 36 F. Supp. 3d at 348, and best serves "as a proxy for the market in

setting counsel fees." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001). As demonstrated below, the percentage Counsel requests is fair and reasonable.

### C.   Analysis of the Relevant Factors Confirms that the Requested Fee Is Reasonable

The requested attorneys' fees are supported by the factors the Second Circuit identified as relevant. In *Goldberger*, the Second Circuit explained that whether the court uses the percentage-of-the-fund method or the lodestar approach, it should consider the traditional criteria that reflect a reasonable fee in common fund cases, including: (i) the time and labor expended by counsel; (ii) the risks of the litigation; (iii) the magnitude and complexity of the litigation; (iv) the requested fee in relation to the settlement; (v) the quality of representation; and (vi) public policy considerations. 209 F.3d at 50. An analysis of these factors demonstrates that Counsel's requested fee of one-third of the Settlement Fund, or $14,666,667, plus accrued interest, is fair and reasonable.

### 1.   Time and Labor Expended by Plaintiffs' Counsel

Plaintiffs' Counsel have expended a substantial amount of time and effort pursuing this litigation on behalf of the Class. Since its inception over more than five years ago, Plaintiffs' Counsel have devoted more than 45,108 hours to this litigation for a total lodestar of $26,282,263.10. *See* Miller Decl. at ¶¶ 74-75. As enumerated *supra* at § I and discussed more fully in the Miller Declaration submitted herewith, Plaintiffs' Counsel doggedly litigated this Action from the earliest stages to the eve of trial (notably, by obtaining class certification and defeating Defendants' motion for summary judgment). This herculean effort of time and labor favors the requested fee award. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (finding that plaintiffs' counsels time and effort – including the review of more than two million pages of documents, conducting five depositions, attending meet-and-confer sessions, preparing for and attending a lengthy mediation session, and engaging in

extensive settlement negotiations – warranted an award of 33% of the settlement fund).

Plaintiffs' Counsel's efforts are further demonstrated by the advanced stage this case reached compared to most securities class actions. For example, of cases filed and resolved between January 2000 and December 2021, approximately 80% were settled or dismissed before a motion for class certification was filed, and of the 20% where a motion for class certification was filed, only 56% reached a decision on class certification.[4] Here, by contrast, Plaintiffs' Counsel devoted time and labor sufficient to see the Action all the way through to the eve of trial. Moreover, the legal work on this litigation will not end with the Court's approval of the Settlement. Plaintiffs' Counsel will necessarily expend many additional hours and resources to assist Class Members with their Proofs of Claim, shepherding the claims process, and responding to Class Member inquiries. *See Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10-cv-4825, 2013 WL 1364147, at *6 (S.D.N.Y. Apr. 2, 2013).

Throughout the litigation, Plaintiffs' Counsel's efforts focused on advancing the Action to bring about the most successful outcome for the Class, whether through settlement or trial, by the most efficient means possible. Accordingly, the time and effort devoted to this case by Plaintiffs' Counsel to obtain the $44 million recovery confirms that the request for one-third (33 $^{1/3}$%) of the Settlement Fund is reasonable.

### 2.    The Magnitude, Complexity, and Risk of Litigation

In the Second Circuit, "the risk of success" is "perhaps the foremost factor to be considered in determining" a reasonable award. *Goldberger*, 209 F.3d at 54. Indeed, courts within the Second Circuit have long recognized that the risk of non-payment associated with a contingency arrangement is an important factor in determining an appropriate fee award:

---

[4] NERA Economic Consulting, Janeen McIntosh and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review," January 25, 2022 at 15.

> Lead Counsel undertook this Action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute the Action without a guarantee of compensation or even the recovery of expenses. Unlike counsel for Defendants, who is paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel has not been compensated for any time or expenses since this case began, and would have received no compensation or expenses had this case not been successful.

*City of Providence*, 2014 WL 1883494, at *14. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-cv-11814, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004). Thus, it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) ; *see also In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel). Here, Plaintiffs' Counsel pursued claims on behalf of the Class for more than five years, with no guarantee of ever being compensated for the investment of time and money that the Action would require. In undertaking this responsibility, they dedicated substantial attorney and professional resources to the prosecution of the litigation. Plaintiffs' Counsel also advanced over $3,462,683.78 dollars in out-of-pocket expenses with no guaranty that those expenses would ever be reimbursed. Not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. The financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

Law firms handling complex contingent litigation frequently lose, whether on a motion to dismiss, class certification, or summary judgment. Indeed, the risk of no recovery in complex cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."). Even plaintiffs who succeed at trial may find their judgment overturned on appeal or on a post-trial motion.[5]

"The difficulty of establishing liability is a common risk of securities litigation." *In re AOL Time Warner, Inc.*, No. 02-cv-5575, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006). As one court has noted, an "unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard." *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001). Indeed, the high rate of dismissals in securities class actions

---

[5] *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 730 (11th Cir. 2012) (affirming judgment as a matter of law on the basis of loss causation following a jury verdict partially in plaintiffs' favor); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, No. 84-cv-20148, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10, 18 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for judgment notwithstanding the verdict was denied, on appeal the judgment was reversed and the case was dismissed after 11 years of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 (2d Cir. 1979) (multimillion dollar judgment reversed after lengthy trial).

demonstrates the risks involved as compared to the prospects for success. Cornerstone Research reports that of securities class actions filed in 2017, the year this Action was filed, 54% have been dismissed.[6] And according to NERA Economic Consulting, the rate of dismissal in securities class actions has steadily increased over time: in 2012, a little over one-third of cases filed were dismissed, whereas in 2021, over half of the cases filed were dismissed.[7] Plaintiffs faced that considerable risk here.

While Plaintiffs were able to overcome challenges at the motion practice stages of this litigation, there could be no assurance of success at trial. Plaintiffs recognize that a similar claim against the same Defendants prosecuted through trial by an opt-out plaintiff in Texas state court resulted in a complete defense verdict. As discussed in the briefing accompanying Plaintiffs' Final Approval Motion, to prevail in the Action, Plaintiffs would face complex legal and factual issues vehemently disputed by Defendants. Specifically, Plaintiffs expect that disputes about whether their statements were false and whether any omissions were material would be deeply disputed at trial. *See* Miller Decl. at ¶ 67.

Further, Defendants would have continued to argue that, even if Plaintiffs could establish a material misstatement or omission, there was no evidence upon which the requisite mental state of scienter – *i.e.*, that Defendants misled investors intentionally or with extreme recklessness – could be proven. The scienter requirement is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, No. 09-cv-0628, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011) ("[T]he element of

---

[6] Cornerstone Research, "Securities Class Action Filings, 2021 Year in Review," at p.18 figure 17 (of the cases filed in 2017 36% are settled, 8% are continuing, and 2% were remanded).

[7] NERA Economic Consulting, Janeen McIntosh and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review," January 25, 2022 at 11.

scienter is often the most difficult and controversial aspect of a securities fraud claim."); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 264 F.3d 131 (2d Cir. 2001). Here, Defendants were adamant that they had no intent to deceive.

Another considerable risk is whether Plaintiffs could ultimately prove, in the face of vigorous opposition, that the Class was damaged by the alleged misrepresentations and the amount of those damages. At trial, this would come down to "battle of experts." The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for Defendants to minimize the Class's losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions. *See In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 67-68 (S.D.N.Y. 2012) (noting that in a battle of the experts "victory is by no means assured" and the "jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses"). Thus, even if Plaintiffs prevailed as to liability at trial, the judgment obtained could have been only a fraction of the damages claimed.

Finally, even if Plaintiffs overcame all of these significant risks and prevailed at trial, such a victory would not have guaranteed the Class an ultimate recovery larger than the $44,000,000 Settlement. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015), *reh'g denied* (July 1, 2015) (reversing jury verdict awarding investors $2.46 billion and remanding for a new trial); *Robbins*, 116 F.3d at 1449 (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, No. 07-cv-61542, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted

defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard*, 688 F.3d at 730. This is especially the case here where the bankruptcy reorganization of CB&I's successor, McDermott International Inc. ("McDermott"), could limit any actual recovery, should Plaintiffs prevail at trial. Accordingly, this factor demonstrates that the requested fee is reasonable and fair.

### 3. The Settling Parties Were Represented by Experienced, High-Caliber Counsel

The result achieved and the quality of the services provided are also important factors for courts to consider in determining reasonable attorneys' fees under a percentage-of-fund analysis. *See Goldberger*, 209 F.3d at 50; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745, 748 (S.D.N.Y. 1985). Despite the significant risk to recovery in this Action, Plaintiffs' Counsel successfully obtained a substantial $44 million cash settlement for the Class. This represents approximately 6.28% of estimated ***maximum*** class-wide damages, more than 3.5 times the median recovery of 1.7% of damages in securities class with investor losses of between $600 million and $999 million.[8] Moreover, the recovery represents the majority of all remaining insurance proceeds.

The experience of counsel is also relevant in determining fair compensation. *See, e.g.*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974); *Eltman v. Grandma Lee's, Inc.*, No. 82-cv-1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986). As the firm resumes demonstrate,[9] KSF and Pomerantz have extensive experience in the specialized field of securities litigation. They successfully leveraged this experience and their resources to effectively advance the Action and successfully negotiate the Settlement.

---

[8] NERA Economic Consulting, Janeen McIntosh and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review," January 25, 2022 at 23.

[9] The resumes of KSF and Pomerantz LLP are submitted as Exhibits F and G to the Miller Declaration, respectively.

The quality and vigor of opposing counsel also matters. *See Warner Commc'ns*, 618 F. Supp. at 749. This litigation was vigorously contested by Defendants who were ably represented by very experienced and qualified attorneys from Baker Botts L.L.P. *See* Miller Decl. at ¶ 80. Proving their mettle, Baker Botts won a jury verdict in a Texas state court case filed by an individual investor involving the same Defendants here. *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *28 (S.D.N.Y. Nov. 8, 2010) (standing of opposing counsel underscores complexity of litigation and challenges faced by class counsel); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03-cv-5755, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work."), *aff'd,* 272 F. App'x 9 (2d Cir. 2008). "[N]otwithstanding this formidable opposition, Class Counsel was able to develop Plaintiffs' case so as to resolve the litigation on terms favorably to the Class." *City of Providence*, 2014 WL 1883494, at *17. The fact that Plaintiffs' Counsel achieved the Settlement for the Class in the face of high-quality legal opposition further evidences the quality of their efforts. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010).

The positive reaction by Settlement Class Members confirms the quality of Plaintiffs' Counsel's representation. To date, no Class Members have objected to the Settlement, and only two putative Class Members have requested exclusion from the Class. *See* Miller Decl. at ¶ 55; *see also Silverstein v. AllianceBernstein, L.P.*, No. 09-cv-5904, 2013 WL 7122612, at *9 (S.D.N.Y. Dec. 20, 2013) ("No Class Member objected to Class Counsel's request for 33 1/3% of the fund, which also provides support for Class Counsel's fee request."). That such a positive reaction followed the mailing and emailing of nearly 250,000 Postcard Notices constitutes

powerful support for the requested awards.

### 4.    The Requested Fee in Relation to the Settlement is Fair, Reasonable, and Wholly Consistent with Case Law

"When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354, at *3 (E.D.N.Y. June 24, 2010); *see also Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126, 2018 WL 6250657, at *2 (S.D.N.Y. Nov. 29, 2018) ("[T]o determine what an appropriate range of fees in relation to the settlement might be, the Court begins not with lead counsel's proposal, but by assessing the percentages awarded to class counsel in comparable cases in this market."). Here, Plaintiffs' Counsel's fee request of one-third (33 $^{1/3}$%) of the Settlement Fund is fair and reasonable for litigation of this kind and wholly consistent with the range of percentages that courts in this Circuit have awarded in similar securities class action and complex litigation settlements of this size. *See, e.g.*, *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding plaintiffs' counsel one-third of the settlement fund of over $510 million); *Landmen Partners Inc. v. The Blackstone Grp. L.P.*, No. 08-cv-03601, ECF No. 183 (S.D.N.Y. filed Apr. 15, 2008) (awarding 33.33% of $85 million settlement fund); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *12 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement), *aff'd*, 674 F. App'x 37 (2d Cir. 2016); *City of Providence*, 2014 WL 1883494, at *20 (awarding 33% of $15 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. at 164-65 (awarding 33% fee); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-cv-4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding one-third of settlement and finding "Class Counsel's request for 33%

of the Settlement Fund is typical in class action settlements in the Second Circuit").[10] Here, Plaintiffs' Counsel's request is in line with fees awarded in similar securities class action settlements, amounts to a *negative* lodestar multiplier of **0.55**, and should be granted.

### 5. Public Policy Considerations: Private Securities Suits Are an "Essential Supplement" to Criminal Prosecution and Civil Enforcement

"Congress, the Executive Branch, and [the Supreme] Court…have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007)); *see also Bateman*, 472 U.S. at 310 (emphasizing that private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action"). The federal securities laws are remedial in nature and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988).[11]

---

[10] The same is true in other courts. *See, e.g.*, *Silverberg v. People's Bank*, 23 F. App'x 46, 48 (2d Cir. 2001) (affirming award of attorneys' fees and expenses of nearly one-third of settlement fund); *Khait v. Whirlpool Corp.*, No. 06-cv-6381, 2010 WL 2025106, at *9-10 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (awarding one-third fee of $7.8 million, which was "well within the range accepted by courts in this circuit"); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05-cv-0720, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of fund, finding it "typical in class action settlements in the Second Circuit"); *Collins v. Olin Corp.*, No. 03-cv-0945, 2010 WL 1677764, at *6–7 (D. Conn. Apr. 21, 2010) (awarding one-third of settlement fund); *In re Med. X-Ray Film Antitrust Litig.*, No. 93-cv-5904, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (awarding 33 1/3% of a roughly $40 million settlement fund as "well within the range accepted by courts in this circuit").

[11] *See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 169 (S.D.N.Y. 1989) ("Enforcement of the federal securities laws should be encouraged in order to carry out the statutory purpose of protecting investors and assuring compliance. A large segment

Courts in this District recognize the strong public policy in favor of attorneys' fee awards in order to encourage securities-fraud class actions. *See, e.g.*, *Hicks v. Stanley*, No. 01-cv-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005); *In re Worldcom, Inc. Sec. Litig.*, 388 Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."). This factor therefore also weighs in favor of the requested fee.

### 6. A Lodestar Cross-Check Confirms That the Requested Attorneys' Fees are Reasonable

In selecting an appropriate fee award, the Supreme Court recognizes that a fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). Contingency fees are common in nonrepresentative tort actions, and generally range from 30% to 40% of the gross recovery. *See Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring). A RAND study of federal lawsuits found that, of the cases in which contingent fees were paid, the percentage was 33% over half the time, less than 33% about a quarter of the time, and more than 33% in the remainder.[12] Plainly, the requested fee fairly

---

of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken."); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Warner Commc'ns,* 618 F. Supp. at 750-51 (observing that "[f]air awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance").

[12] *See* Herbert M. Kritzer, *Seven Dogged Myths Concerning Contingency Fees*, 80 Wash. U. L.Q. 739, 760 (2002) (summarizing data reported in James S. Kakalik et al., "An Evaluation of Judicial Case Management Under the Civil Justice Reform Act," (1996)).

reflects the private marketplace for contingent fee legal services. Moreover, as outlined above, the compensation requested here is within the range of percentage fee awards within the Second Circuit, taking into account the size of the settlement. *See supra* at § I.

This Court may also consider as a cross-check whether the requested fee would result in a disproportionate multiplier to Plaintiffs' Counsel's lodestar. *See, e.g.*, *In re AOL Time Warner, Inc.*, No. 02-cv-5575, 2006 WL 3057232, at *40 (S.D.N.Y. Oct. 25, 2006) (describing this second analysis); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 85 (E.D.N.Y. 2002). As set forth in Miller Declaration at ¶¶ 73-74 and Ex. B (Declaration of Joshua B. Silverman), counsel expended over 45,108 hours for a total lodestar of $26,282,263.10 in litigating this Action, resulting in a *negative* multiplier of approximately **0.55**.[13] These lodestar figures are based on time records maintained by KSF and Pomerantz in the ordinary course of business.

The negative multiplier itself "affords additional evidence that the requested fee is reasonable[,]" *see City of Providence*, 2014 WL 1883494, at *13, and is ***much*** lower than the multipliers of one to five that is typically applied in common fund cases. *See*, *e.g.*, *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 172, 185 (W.D.N.Y. 2011) (noting that multiplier of 5.3 was "not atypical for similar fee-award cases"); *WorldCom*, 388 F. Supp. 2d at 354-59 (multiplier of 4.0); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In

---

[13] To arrive at the lodestar, the hours expended were multiplied by each attorney's respective hourly rate. *See Savoie*, 166 F.3d at 460. It is well-settled that the use of an attorney's current rate in place at the time of the fee application is proper, since such rates compensate for inflation, the loss of use of funds, and the delay in receiving payment. *See, e.g.*, *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015); *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998); *Jenkins*, 491 U.S. at 283-84.

contingent litigation, lodestar multiples of over 4 are routinely awarded by courts[.]").[14]

Moreover, as noted above, Plaintiffs' Counsel's legal work will not end with the Court's approval of the Settlement, but instead will include additional hours and resources assisting Class Members in obtaining their relief. *See supra* at § II.C.1. Accordingly, the time and effort devoted to this case by counsel to obtain the $44,000,000 recovery confirm that the requested fee is manifestly reasonable.

### D. Plaintiffs' Counsel Should Be Reimbursed for $3,462,683.78 in Litigation Expenses

Plaintiffs' Counsel further request that the Court grant reimbursement of $3,462,683.78 in litigation expenses incurred in the prosecution of this Action. *See* Miller Decl. at ¶¶ 86-93. Courts routinely hold that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses that would have been reimbursed by an hourly-billed client. *See, e.g.*, *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d at 363 ("In connection with settlement of a class action, counsel's reasonable out-of-pocket expense are properly awarded."); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240, 2007 WL 2230177, at *18 (S.D.N.Y. July 27, 2007) ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course.").

The litigation expenses here were all necessary for the prosecution of this Action and all are of the type traditionally billed to clients paying hourly. Approximately 53% of the expenses were for the fees of Plaintiffs' experts. Such expenses are not only reasonable, but essential to

---

[14] *See also In re Deutsche Telekom AG Sec. Litig.*, No. 00-cv-9475, 2005 WL 7984326, at *4 (S.D.N.Y. June 9, 2005) (multiplier of 3.96); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (multiplier of 5.5); *Kurzweil v. Philip Morris Companies, Inc.*, No. 94-cv2373, 1999 WL 1076105, at *3 (S.D.N.Y. Nov. 30, 1999) (noting that multipliers between 3 and 4.5 are common in federal securities cases).

advance the interests of the Class. *See, e.g.*, *In re Facebook, Inc. Sec. Litig*, 343 F. Supp. 3d 394, 418 (S.D.N.Y. 2018) (total litigation expenses of $4.96 million, the majority of which were expert expenses, were approved as "reasonable in light of the duration and complexity of [that] action," which was shorter and resulted in a smaller settlement than here). A "massive expenditure for expert fees is wholly unsurprising" in securities fraud cases, "given the many core issues that turn upon expert opinions." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012).

The other large expense incurred for e-Discovery fees of $786,632.20 (approximately 22% of all litigation expenses) was equally necessary. This case involved a huge document production amounting to over 9 million pages. At the time most documents were received, Plaintiffs were operating within a tight six-month fact discovery schedule. Accordingly, they selected an e-Discovery platform that would allow for rapid review and AI machine learning to promote the likely most significant documents to the top of the review heap. *See* Miller Decl. at ¶¶ 26, 91.

Other expenses were also of the type normally charged to clients paying hourly. These included deposition costs, fees from Court-appointed Special Master Judge Scheindlin for extensive work resolving discovery and class disputes, mediation fees, investigator fees, economy-class travel expenses, online legal research, and miscellaneous clerical costs. *See* Miller Decl. at ¶¶ 86-93 and at Ex. B. These expenses were necessary and reasonable for the prosecution and resolution of this Action and are of the type that are routinely approved. *See, e.g.*, *Bear Stearns*, 909 F. Supp. 2d at 272; *Alaska Electrical Pension Fund*, 2018 WL 6250657, at *3 (reimbursing expenses in the amount of $18,429,687.63, finding "that amount, although sizeable, was reasonable and necessary given the nature and complexity of this case"); *In re*

*MetLife Demutualization Litig.*, 689 F. Supp. 2d at 364 (approving $4.5 million reimbursement of "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses"); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund.").

Finally, Plaintiffs' Counsel incurred an additional $152,620.71 in expenses relating to the earlier notice of pendency approved by the Court and disseminated to Class Members following class certification in this Action.

Considering the complexity and duration of the Action, Plaintiffs' Counsel's expenses of $3,462,683.78 are eminently reasonable.

### E.    The Proposed Compensatory Awards to Plaintiffs are Reasonable

The PSLRA expressly permits Plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class[]." 15 U.S.C. § 78u-4(a)(4). "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. at 165. In accordance with the PSLRA and their inherent powers, courts routinely grant reimbursement of substantial sums to lead plaintiffs and class representative. *See, e.g.*, *Alaska Electrical Pension Fund*, 2018 WL 6250657, at *4 (awarding $50,000 to each of six named

plaintiffs and $100,000 each to two others, finding that "the considerable effort expended by the named Plaintiffs to assist in the litigation renders the inventive awards requested by lead counsel appropriate" and that "in the aggregate they amount to a miniscule portion of the settlement fund"); *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MDL 2058, 2013 WL 12091355 (S.D.N.Y. Apr. 8, 2013) (awarding $259,610 to one plaintiff and $125,688 to a second plaintiff), *aff'd*, 772 F.3d 125 (2d Cir. 2014); *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016) (awarding $130,323 to sole lead plaintiff). Plaintiffs' requested awards are also appropriate in light of their relationship to "the amounts recovered by absent class members under the settlement." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d at 370; *see also In re Top Tankers, Inc. Sec. Litig.*, 2008 WL 2944620, at *18 ($3,000 award from $1.2 million settlement).

Here, Plaintiffs at all times diligently and capably represented the best interests of the Class and awards reflecting this effort of $60,000 to ALSAR, $25,000 to Iron Workers Local 40, 362, & 417 – Union Security Funds, and $20,000 to Iron Workers Local 580 – Joint Funds. Dr. Fishel, the representative of Lead Plaintiff ALSAR, served as the sole Lead Plaintiff, engaging with counsel at all stages of the litigation and preparing to be a key witness at trial, after a strong performance at his deposition. *See* Miller Decl. at ¶¶ 94-96, Ex. C. As set forth more fully in the Miller Declaration, Dr. Fishel has been actively monitoring and overseeing this Action since ALSAR was appointed Lead Plaintiff on June 14, 2017. In addition to performing more typical duties of a lead plaintiff, Dr. Fishel both reviewed and edited the operative Amended Complaint and offered substantive comments on Defendants' motion to dismiss. *See* Miller Decl., Ex. C at ¶ 6. As a cardiothoracic surgeon whose time is highly valuable, moreover, Dr. Fishel forfeited

significant compensation in order to travel to New Orleans to testify at his deposition, as well as to prepare to testify at trial with Lead Counsel. *Id.* at ¶¶ 3, 6. For those reasons, Plaintiffs respectfully submit that Dr. Fishel's requested award of $60,000, after devoting approximately 96 hours to the litigation in furtherance of the excellent result achieved, should be granted.

The requested awards to the Iron Workers are also well justified. Additional class representatives IW 40, 361 & 417 and IW 580: (a) monitored the Action and received regular updates on case developments; (b) reviewed the Amended Complaint and key motions, briefs, and orders; (c) reviewed and responded to document requests and interrogatories; (d) prepared for and sat for depositions; and (e) coordinated with Plaintiffs' Counsel during settlement negotiations and approved the Settlement. *See* Miller Decl. at ¶ 97, Exs. D and E.  Therefore, Plaintiffs respectfully submit that the awards for IW 40, 361 & 417 ($25,000) and IW 580 ($20,000), after devoting more than 200 and 100 hours to the litigation, respectively, should be granted.

Plaintiffs and Plaintiffs' Counsel submit that the relatively modest request of awards amounting in the aggregate to $105,000 to compensate the Class Representatives in this Action for their time and service to the Class throughout the life of this case is reasonable and should be granted. Importantly, these awards fall well below the noticed cap of $125,000, to which no Class Members have objected.

## III.   TIMING OF PAYMENTS

Consistent with the approach this Court took in *Stein v. Eagle Bancorp*, Plaintiffs propose that "half of the fee award and all of the expense reimbursement are payable immediately upon final approval of the Settlement, and the remaining half of the fee award is payable upon substantial distribution to the [] Class upon prior written notice to the Court." No. 19-cv-6873, ECF No. 104 (S.D.N.Y. Feb. 10, 2022) (Schofield, J.); *see also Calfo, et al. v. Messina, Sr. et al.*,

No. 15-cv-4010, ECF No. 184 (S.D.N.Y. Oct. 30, 2017) (Schofield, J.) (same); *In re Delcath Systems, Inc. Sec. Litig.*, No. 13-cv-3116, ECF No. 141 (S.D.N.Y. Oct. 22, 2015) (Schofield, J.) (same). As discussed above, the Settlement was an excellent result for the Class, and securing this recovery required substantial time, skill, and effort. Plaintiffs' Counsel did not seek a quick settlement after defeating Defendants' motion to dismiss, but rather litigated this matter up to the eve of trial. This effort is manifested by Plaintiffs' Counsel's negative lodestar multiplier of **0.55**.

Finally, there should be no concern of delay in the distribution of the Net Settlement Fund to the Class here, as the Claims Administrator has committed to provide Lead Counsel with a distribution declaration within four months following the July 1, 2022 claim filing deadline. *See* Miller Decl. at Ex. A, ¶ 10. This will enable Lead Counsel to make a motion for distribution of the Net Settlement Fund shortly thereafter. Should the Court so Order, moreover, Lead Counsel is also prepared to provide the Court with monthly updates regarding the progress of the administration beginning one month after the Court grants final approval of the Settlement.

## IV.    CONCLUSION

Plaintiffs' Counsel's efforts have resulted in a very favorable result for the Class under the circumstances. Therefore, they respectfully request that the Court: (a) award attorneys' fees in the amount of 33 $^{1/3}$% of the gross Settlement fund, *i.e.*, $14,666,667, plus interest; (b) reimburse expenses to Plaintiffs' Counsel in the amount of $3,462,683.78, plus interest; and (c) grant an award to Plaintiffs in the amount of $105,000 ($60,000 to ALSAR, $25,000 to Iron Workers Local 40, 362, & 417 – Union Security Funds, and $20,000 to Iron Workers Local 580 – Joint Funds).

DATED: June 27, 2022

Respectfully submitted,

**KAHN SWICK & FOTI, LLC**

/s/ *Kim E. Miller*
Kim E. Miller (KM-6996)
J. Ryan Lopatka (*admitted PHV*)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3730
Fax: (504) 455-1498
Email: kim.miller@ksfcounsel.com
Email: j.lopatka@ksfcounsel.com

-and-

Lewis S. Kahn
Craig J. Geraci, Jr. (*admitted PHV*)
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Fax: (504) 455-1498
Email: lewis.kahn@ksfcounsel.com
Email: craig.geraci@ksfcounsel.com

*Lead Counsel for Lead Plaintiff ALSAR Ltd.
Partnership and Class Counsel*

**POMERANTZ LLP**
Joshua B. Silverman (*admitted PHV*)
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Email: jbsilverman@pomlaw.com

-and-

Jeremy A. Lieberman
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
Email: jalieberman@pomlaw.com

26

*Counsel for Additional Plaintiffs Iron Workers Local 40, 361, & 417 – Union Security Funds and Iron Workers Local 580 – Joint Funds and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Memorandum of Law in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses and Compensatory Awards on Defendants on June 27, 2022 via CM/ECF.

/s/ *Kim E. Miller*
Kim E. Miller