**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE CHICAGO BRIDGE & IRON COMPANY N.V. SECURITIES LITIGATION | ) ) ) ) ) ) | **CASE NO. 1:17-CV-1580** <br> Hon. Lorna Schofield |

**NOTICE OF SUPPLEMENTAL SUBMISSION REGARDING FINAL APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES**

**KAHN SWICK & FOTI, LLC**
Kim E. Miller (KM-6996)
J. Ryan Lopatka (*admitted PHV*)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (504) 455-1400
Fax: (504) 455-1498

Lewis S. Kahn
Craig J. Geraci, Jr. (*admitted PHV*)
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Fax: (504) 455-1498

*Lead Counsel for Lead Plaintiff ALSAR Ltd. Partnership and Class Counsel*

**POMERANTZ LLP**
Joshua B. Silverman (*admitted PHV*)
10 South La Salle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Fax: (312) 229-8811

*Counsel for Additional Plaintiffs Iron Workers Local 40, 361, & 417 – Union Security Funds and Iron Workers Local 580 – Joint Funds ("IW Funds")*

Lead Plaintiff and Additional Plaintiffs, individually and on behalf of all Class Members, respectfully submit the following supplemental information pursuant to the Court's instructions during the Final Approval Hearing held on July 25, 2022 (the "Final Approval Hearing").[1]

## I. ADDITIONAL INFORMATION REGARDING ADMINISTRATION OF SETTLEMENT

Pursuant to the Court's request for additional information regarding the notice and administration process, Plaintiffs respectfully submit herewith a supplemental declaration from Court-approved Claims Administrator, A.B. Data. The Third Supplemental Declaration of Eric Nordskog is attached hereto as Exhibit A and discussed herein below.

### A. Submitted Claims

Out of 61,639 submitted Proofs of Claim, the Claims Administrator determined that 36,297 are eligible, subject to verification of documentation, representing aggregate Recognized Losses of $457,367,840.43. *See* Third Supp. Nordskog Decl. at ¶ 8. Of the 61,639 submitted claims, 54,694 were submitted electronically to A.B. Data's Electronic Claim Filing Team, 4,496 were submitted "online" through the online filing portal on the settlement website, and 2,449 "hardcopy" claims were submitted on paper claim forms. *Id.* Of the 25,342 claims deemed ineligible, two reasons exist for most of those rejections. First, 9,046 claims did not set forth purchases of Chicago Bridge & Iron Company N.V. ("CB&I") common stock at all. *Id.* at ¶ 10. Second, 16,239 of the ineligible claims did not result in a Recognized Loss under the Plan of Allocation ("POA"). *Id.* As to the remaining rejected claims, 55 were duplicates, and two were withdrawn. *Id.*

[1] Attached as Exhibit B is the [Proposed] Final Judgment and Order of Dismissal with Prejudice previously submitted in connection with Plaintiffs' Motion for Preliminary Approval (Dkt. No. 423-6) and which Plaintiffs' Counsel will contemporaneously submit in Word format pursuant to the Court's instruction at the Final Approval Hearing.

The Claims Administrator confirmed that the percentage of eligible claims of the total submitted, 59%, is in line with the majority of securities cases it has handled. *Id.* at ¶ 9. Of course, as part of the administration process, all claimants whose claims were deemed ineligible will be given an opportunity to cure deficient claims with proof of a Recognized Loss. The Claims Administrator will work diligently under the supervision and with assistance of Plaintiffs' Counsel to assist Class Members and potential Class Members with this process.

### B. Undeliverables, Previously Excluded Claims, Website and Toll-Free Number Activity

Of all Postcard Notices sent to putative Class Members, 5,181 were returned by the United States Postal Service to the Claims Administrator as undeliverable as addressed. *Id.* at ¶ 3. The Claims Administrator successfully re-mailed 1,981 Postcard Notice where an updated address was provided or independently ascertained, which is consistent with the Claims Administrator's experienced cure rate. *Id.*

Of the six Non-Direct Action individuals who previously excluded themselves during the Notice of Pendency phase, none have filed claims. *Id.* at ¶ 7.

As of July 26, 2022, the settlement website has been visited a total of 13,123 times, and the Claims Administrator received a total of 1,910 calls from potential Class Members. *Id.* at ¶¶ 4-5.

## II. ADDITIONAL SUPPORT AND ANALYSIS FOR PLAINTIFFS' COUNSEL'S FEE REQUEST

This Court has previously adopted an approach to analyzing requests for attorneys' fees from common funds that looks to certain empirical analyses that "divide[] cases into [] ranges of recovery (deciles) based on the amount of the settlement, and then calculate[] the mean and median fee percent, as well as the standard deviation." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 349 (S.D.N.Y. 2014) (citing EISENBERG & MILLER, *Attorney Fees and Expenses in*

*Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 248 (2010); FITZPATRICK, *An Empirical Study of Class Action Settlements and Their Fee Award*, 7 J. Empirical Legal Stud. 811 (2010)). As described below, Plaintiffs respectfully submit that the appropriate baseline is 30.7%, subject to an upward adjustment to 33 1/3 % to reflect Plaintiffs' Counsel's negative lodestar.

***Baseline:*** In *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15-cv-9936, 2019 U.S. Dist. LEXIS 36942, at *6-7 (S.D.N.Y. Mar. 7, 2019) (Schofield, J.), this Court noted that the raw figures considered in Fitzpatrick's empirical analysis could be utilized to determine a baseline, but found those raw figures, "which apply to all types of cases," may have understated the appropriate baseline percentage for cases "concern[ing] a highly specialized area of law," such as ERISA cases. In light of this fact, the Court determined the "reasonable baseline fee" was 27%, rather than the 25% mean identified in the Fitzpatrick study, and then held an "upward adjustment [of 3%] to the baseline fee [was] warranted." *Id.*

Similarly, Plaintiffs believe the "notoriously complex" nature of securities fraud class actions, *see Guevoura Fund Ltd. v. Sillerman*, No.15-cv-07192, 2019 U.S. Dist. LEXIS 218116, at *20 (S.D.N.Y. Dec. 18, 2019) (McMahon, J.), warrants a baseline of 30.7%, especially in consideration of the nuanced accounting issues implicated here. This baseline is one standard deviation above the mean of the Fitzpatrick study's pertinent decile.[2] Thus, to the extent the Court

[2] *See In re Colgate-Palmolive*, 36 F. Supp. at 350 (noting that in *An Empirical Study of Class Action Settlements and Their Fee Award*, Fitzpatrick analyzed 688 cases, with 42 cases encompassing a range of settlement values from $30 million to $72.5 million; of those 42 cases, the mean fee percentage was 22.3% and the "median fee percentage [was] 24.9% with a standard deviation of 8.4%"). Further, while Plaintiffs note the study recently published by NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (Jan. 25, 2022), states the median fee percentage awarded in *every* securities class action nationwide between 2012 and 2021 (for the range of settlement values from $25 million to $100 million) is 25%, the cases cited *infra* within the same settlement range and time period support a finding that 33 1/3% is an appropriate award here.

considers Fitzpatrick's study "a useful starting point" for its fee analysis (*McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 385 (S.D.N.Y. 2017) (Schofield, J.)), this adjustment is both logically consistent with Fitzpatrick's findings and statistically principled.[3]

Unlike *City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, which settled at an early stage, the exceptional "magnitude and complexity" of this case – including, but not limited to, the involvement of no fewer than six testifying experts, myriad consultants on a range of topics, the bankruptcy of CB&I's acquirer, McDermott International, and the advanced stage of proceedings – "warrants a departure from the [] range typically seen in similar cases." No. 17-cv-10014, 2020 U.S. Dist. LEXIS 237595, at *9 (S.D.N.Y. Dec. 17, 2020) (Schofield, J.). Further, a baseline of 30.7% is consistent with the fee percentages Judge McMahon noted are "routinely award[ed]" in this Circuit. *Guevoura Fund*, 2019 U.S. Dist. LEXIS 218116, at *46 ("In this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund.") (internal quotation and citation omitted); *see also Clem v. KeyBank, N.A.*, 2014 U.S. Dist. LEXIS 87174, at *23 (S.D.N.Y. June 20, 2014) ("Class Counsel's request for 33% of the Fund is reasonable and consistent with the norms of class litigation in this circuit.") (internal citation omitted); *Silverstein v. AllianceBernstein LP*, No. 09-CV-5904, 2013 U.S. Dist. LEXIS 179734, at *23 (S.D.N.Y. Dec. 20, 2013) (same); *Thornhill v. CVS Pharmacy, Inc.*, 2014 U.S. Dist. LEXIS 37007, at *6 (S.D.N.Y. Mar. 20, 2014) ("In this Circuit, courts typically approve attorney's fees that range between 30 and 33 1/3%.").[4]

---

[3] While additional empirical analyses have since been published, *see infra*, at least one court affords comparatively greater credence to Fitzpatrick's study, which analyzes a significantly larger sample set of cases. *See Rodman v. Safeway Inc.*, No. 11-cv-03003, 2018 U.S. Dist. LEXIS 143867, at *12 (N.D. Cal. Aug. 22, 2018) ("Although this study is older and accounts for fewer years, it examines many more cases.").

[4] Regardless of whether the Court accepts Plaintiffs' reasonable baseline of 30.7% (or even the 27% in *Moreno*), Plaintiffs nevertheless submit that an upward adjustment to 33 1/3% is warranted

***<u>Adjustment for lodestar:</u>*** As the baseline is just a starting point, it then should be adjusted so that counsel who put in minimal work to achieve the settlement are not overcompensated and those who put in extraordinary work are not undercompensated. While neither the Fitzpatrick study nor the NERA study contains detailed lodestar analyses, another recent study shows that most fee awards (which would be included in baseline calculations) involved ***much*** higher lodestar multipliers than the request at issue here. *See* THEODORE EISENBERG ET AL., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. REV. 937, 950 (2017). Table 13 of this study demonstrates that the median lodestar multiplier for those 32 cases within the same settlement range as here is **nearly *300%* higher than the 0.55 negative lodestar multiplier requested here** and thus speaks volumes to the appropriateness of an award of 33 1/3% in this case. This result is also consistent with Eisenberg, et al.'s presentation of "evidence for a negative correlation between the multiplier and the fee percentage," as "a high multiplier indicates that the fee percentage is too high…and should be brought into check." *Id.* at 966. Conversely, the lower a lodestar multiplier (as here), the higher a fee percentage is appropriate.

---

in this case, because the risks in this action were significantly greater than those in cases of a similar size, difficulty, and subject matter. For example, after Plaintiffs had invested nearly three years' worth of time and expenses in this case, the successor in interest to CB&I filed for bankruptcy in January 2020, leaving Plaintiffs, in effect, at the mercy of rapidly eroding insurance policies for litigation that would extend for at least 2 more years. Likewise, the quality of representation here warrants an upward adjustment, because even though Defendants tried a similar opt-out case to verdict on January 29, 2021, and won a complete defense verdict, Plaintiffs pressed on for another year in the face of very uncertain circumstances and were still able to secure a Settlement representing the majority of the remaining insurance proceeds. Further demonstrating the exceptional result achieved here under very difficult and rare circumstances is the fact that the Direct Action institutional plaintiffs who filed their own individual actions opted back into the Class to participate in this Settlement.

TABLE 13. MEAN, MEDIAN, AND STANDARD DEVIATION OF MULTIPLIER, CONTROLLING FOR CLASS RECOVERY AMOUNT, 2009–2013

| *Range of Class Recovery Amount (Millions)* | *Mean* | *Median* | *SD* | *N* |
|---|---|---|---|---|
| Recovery <=0.4 | 0.85 | 0.67 | 0.52 | 33 |
| Recovery > 0.4 <= 0.75 | 0.72 | 0.74 | 0.32 | 25 |
| Recovery > 0.75 <= 1.4 | 1.49 | 1.42 | 0.93 | 20 |
| Recovery > 1.4 <= 2.65 | 1.26 | 1.15 | 0.79 | 29 |
| Recovery > 2.65 <= 3.9 | 1.28 | 1.2 | 0.75 | 26 |
| Recovery > 3.9 <= 6.5 | 1.37 | 1.03 | 1.28 | 29 |
| Recovery > 6.5 <=12 | 1.48 | 1.09 | 0.98 | 34 |
| Recovery > 12 <= 23.4 | 1.86 | 1.35 | 1.58 | 29 |
| Recovery > 23.4 <= 67.5 | 1.65 | 1.5 | 1.27 | 32 |
| Recovery > 67.5 | 2.72 | 1.5 | 3.59 | 35 |

*Id.* at 966-67 (highlighting added).

Plaintiffs' Counsel's request for a fee of 33 1/3% equates to a negative lodestar multiplier of ***0.55*** on an exceptional $44 million all-cash result against a nominal bankrupt defendant company and three of its former officers. This adjustment of the baseline fee (to 33 1/3%) is supported by that result and the extraordinary amount of work that Plaintiffs' Counsel has done on this high-risk case. Rather than seeking a quick and modest settlement after surviving the motion to dismiss (or even class certification or summary judgment), Plaintiffs' Counsel instead diligently did the work to achieve the result at hand. Plaintiffs' Counsel reviewed and analyzed nine million pages of documents; took or defended 32 in-person depositions; participated in an 11-hour class certification hearing before Special Master Judge Scheindlin that ultimately led to class certification by this Court; defeated a Rule 23(f) petition; met and conferred on various discovery issues and had a number of privilege and ESI disputes resolved by the Special Master; survived summary judgement in large part; made seven motions *in limine* and opposed 16 others; and settled just five weeks before Your Honor's February 7, 2022 trial setting date, after having prepared for trial in earnest, including working with a jury and trial consultant to test trial themes and strategies,

commencing preparations of our key witnesses and preparing cross examinations for Defendants' anticipated witnesses, and drafting jury instructions. These tasks were far from theoretical, as any settlement was far from certain, particularly given Baker Botts' trial victory in a Texas state court action involving overlapping issues and the same Defendants.

The case *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 514-15 (S.D.N.Y. 2009) is instructive here. There, the court clarified its previous holding that "a given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement" is a "principle [that] cannot be considered in isolation without also reviewing the amount of work and time spent by counsel in th[e] litigation."

> For those cases in which settlement is quick and the time and labor expended by counsel is low, a high percentage fee would be a windfall and therefore inappropriate. Thus, in *Goldberger* and other recent Second Circuit class action fee decisions, the Circuit affirmed awards of a low percentage fee, but noted that such fees represented positive multipliers to counsel's lodestar figures. This case is different. ***Here, counsel is requesting a high percentage fee, but that fee ($ 195 million) still represents a negative multiplier to the total adjusted lodestar as calculated by this Court ($ 202 million). There is therefore no real danger of over-compensation.***

*Id.* at 515 (emphasis added). Similarly, in *Guevoura Fund* the court awarded attorneys' fees of 33 1/3% of the settlement fund, concluding the fact that "Lead Counsel's request for attorneys' fees reflects a discount on the time Lead Counsel actually spent litigating the matter and requires application of a ***negative multiplier*** to the lodestar" "militates very in favor of the reasonableness of the fee request, particularly in light of the fact that courts generally grant fees with positive multipliers to reflect the complexity and risks undertaken by class counsel." *Guevoura Fund*, 2019 U.S. Dist. LEXIS 218116, at *56-57 (emphasis in original). "Courts have repeatedly recognized that the reasonableness of the fee request under the percentage method is reinforced where, as here, 'the percentage fee would represent a negative multiplier of the lodestar.'" *Id.* at *57 (quoting *In re Blech Sec. Litig.*, 94-cv-7696, 2000 U.S. Dist. LEXIS 6920, at *55 (S.D.N.Y. May 19, 2000))

(collecting cases); *see also Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.*, No. 96-cv-0583, 2002 U.S. Dist. LEXIS 10732, at *8 (S.D.N.Y. June 14, 2002) ("[T]he fact that any reasonable fee would necessarily represent a negative multiplier of the lodestar supports an award at the higher end of the spectrum.").

Moreover, irrespective of the unidentified cases selected for analysis in the above-cited studies, examples of 33 1/3% awards in comparable cases within this Circuit abound. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33 1/3% of $586,000,000 settlement, class(es) certified, with negative lodestar multiplier of 0.5); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-cv-2548, 2019 U.S. Dist. LEXIS 163884 (S.D.N.Y. Sept. 23, 2019) (awarding 33% of $75 million settlement, after defendants' motion for summary judgment denied, with lodestar multiplier of 1.4); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (awarding 33 1/3% of $35 million settlement, after class certification granted, with negative lodestar multiplier of 0.876); *In re Perrigo Co. PLC Securities Litig.*, No. 19-cv-0070 (S.D.N.Y. Feb. 18, 2022), Dkt. Nos. 323, 331 (awarding 33 1/3% of $31.9 million settlement, after defendants' motion for summary judgment and *Daubert* motions denied, with lodestar multiplier of 1.2); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668, at *23, 29-30 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26,500,000 settlement, mid-discovery, with lodestar multiplier of approximately 1.02); *In re Deutsche Bank AG Sec. Litig.*, No. 09-cv-01714, 2020 U.S. Dist. LEXIS 103134, at *6-7 (S.D.N.Y. June 11, 2020) (awarding 33 1/3% of $18.5 million settlement, after class certification granted, with negative lodestar multiplier of 0.38); *Wilson v. LSB Indus.*, No. 15-cv-07614, 2019 U.S. Dist. LEXIS 133895, at *3-4 (S.D.N.Y. June 28, 2019) (awarding 33.3% of $18,450,000 settlement, mid-discovery, with negative lodestar multiplier of 0.62); *City of Providence v. Aéropostale, Inc.*,

2014 U.S. Dist. LEXIS 64517, at *34-35 (S.D.N.Y. May 9, 2014) (awarding 33% of $15,000,000 settlement, mid-discovery, with negative lodestar multiplier of 0.7); *Cates v. Trs. of Columbia Univ.*, No. 16-cv-06524, 2021 U.S. Dist. LEXIS 200890, at *10 (S.D.N.Y. Oct. 18, 2021) (awarding 33 1/3% of $13 million settlement, on eve of trial, with negative lodestar multiplier of 0.47); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding a fee of 33 1/3% of the $13 million settlement, mid-discovery, with negative lodestar multiplier); *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-cv-6716, 2022 U.S. Dist. LEXIS 11427, at *36 (E.D.N.Y. Jan. 21, 2022) (awarding 33 1/3% of $9,000,000 settlement, before full briefing on defendants' motion to dismiss, with negative lodestar multiplier of 0.75); *In re Qudian Sec. Litig.*, No. 17-cv-09741, 2021 U.S. Dist. LEXIS 109258, at *6 (S.D.N.Y. June 8, 2021) (awarding 33 1/3% of $8,500,000 settlement, pre-discovery, with negative lodestar multiplier of 0.8); *Guevoura Fund*, 2019 U.S. Dist. LEXIS 218116, at *56 (awarding 33 1/3% of a $7,500,000 settlement, pre-discovery, with negative lodestar multiplier).

Likewise, numerous cases outside this Circuit also support an award of 33 1/3% here. *See, e.g.*, *Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-cv-1833, 2020 U.S. Dist. LEXIS 69614 (E.D. Pa. Apr. 21, 2020) (awarding 33 1/3% of $65.9 million settlement, post-summary judgment, with negative lodestar multiplier of 0.96); *NECA-IBEW Pension Trust Fund v. Precision Castparts Corp.*, No. 3:16-cv-01756-YY (D. Or. Apr. 2, 2021), Dkt. Nos. 161, 162, 169 (awarding 33 1/3% of $21 million settlement, post-summary judgment and *Daubert* motions, with a negative lodestar multiplier); *In re Tezos Securities Litig.*, No. 17-cv-06779 (N.D. Cal. Sept. 23, 2020), Dkt. Nos. 256, 262, 265 (awarding 33 1/3% of $25 million settlement, mid-discovery, with negative lodestar multiplier of 0.88).

Plaintiffs attach hereto as Exhibit C a chart setting forth a sample of comparable settlements and fee awards, which chart includes the settlement amount, fee percentage, lodestar multiplier, and stage of proceedings.

## III. CONCLUSION

For all the foregoing reasons and the reasons addressed in Plaintiffs' motions and at the Final Approval Hearing, Plaintiffs respectfully submit that the Court should finally approve the Settlement and Plan of Allocation, award attorneys' fees in the amount of 33 1/3% of the gross Settlement Fund ($14,666,667, plus interest), reimburse expenses to Plaintiffs' Counsel in the amount of $3,462,683.78, plus interest, and grant an award to Plaintiffs in the total amount of $105,000 ($60,000 to Lead Plaintiff ALSAR Ltd. Partnership, $25,000 to Iron Workers Local 40, 36 & 417, and $20,000 to Iron Workers Local 580).

DATED: July 27, 2022

Respectfully submitted,

**KAHN SWICK & FOTI, LLC**

/s/ *Kim E. Miller*
Kim E. Miller (KM-6996)
J. Ryan Lopatka (*admitted PHV*)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3730
Fax: (504) 455-1498
Email: kim.miller@ksfcounsel.com
Email: j.lopatka@ksfcounsel.com

-and-

Lewis S. Kahn
Craig J. Geraci, Jr. (*admitted PHV*)
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Fax: (504) 455-1498
Email: lewis.kahn@ksfcounsel.com
Email: craig.geraci@ksfcounsel.com

*Lead Counsel for Lead Plaintiff ALSAR Ltd. Partnership and Class Counsel*

**POMERANTZ LLP**
Joshua B. Silverman (*admitted PHV*)
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Email: jbsilverman@pomlaw.com

-and-

Jeremy A. Lieberman
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
Email: jalieberman@pomlaw.com

*Counsel for Additional Plaintiffs Iron Workers Local 40, 361, & 417 – Union Security Funds and Iron Workers Local 580 – Joint Funds and the Class*

## CERTIFICATE OF SERVICE

On July 27, 2022, the foregoing document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Kim E. Miller*
Kim E. Miller